GIBRALTAR CORRUGATED PAPER CO., INC., *ET AL.*, PLAINTIFFS-APPELLANTS, v. THE TOWNSHIP OF NORTH BERGEN IN THE COUNTY OF HUDSON AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, DEFENDANTS-RESPONDENTS.

Argued September 27, 1955—Decided December 5, 1955.

214

*Mr. Joseph C. Glavin* argued the cause for the plaintiffs-appellants (*Mr. Joseph C. Glavin,* attorney for plaintiffs-

appellants Gibraltar Corrugated Paper Co., Inc., and The Prudential Insurance Company of America; *Mr. Joseph V. Cullum*, attorney for plaintiffs-appellants Max Eckhardt & Son, Inc., Harold M. Pitman Company, Triple M. Transportation Co. and Calumet Block Company; *Messrs. Otis & Kilkenney*, attorneys for plaintiff-appellant Grand City Container Corporation; *Mr. Jay M. Levenson*, attorney for plaintiffs-appellants Ecco High Frequency Electric Corp., North Hudson Grocery Company and Constance A. Weber; *Messrs. Burke, Sheridan & Hourigan*, attorneys for plaintiffs-appellants Felix A. Tagliabue, W. L. Cameron Co., Inc., Shippen Holding Co., Nine Sixty One Bergenline Avenue Company, *et al.*).

*Mr. Nicholas S. Schloeder* argued for the defendants-respondents.

The opinion of the court was delivered by

BURLING, J.   This appeal stems from an order of the Division of Tax Appeals granting the motion of defendant Township of North Bergen (hereinafter referred to as North Bergen) to dismiss so much of the petitions of appeal of the various taxpayer plaintiffs as were based upon a prayer for relief to reduce their assessments at true value "to the same level and standard of value used in levying assessments on other types of property" in the taxing district.   We certified the controversy on our motion prior to consideration by the Appellate Division.   *R. R.* 1:10–1.

North Bergen being a part of Hudson County, the township assessor filed the annual assessment list and duplicate with the Hudson County Board of Taxation.   It is uncontradicted that the assessments on the plaintiffs' properties for 1950 represented "a substantial increase" over the prior 1949 assessments on the same properties.   Prior to April 1, 1950 the county board met for the purpose of "examining, revising and correcting" the North Bergen tax lists, *R. S.* 54:4–46, and certified the duplicates to the collector of that district without altering in any way the increased assessments on plaintiffs' properties.

Subsequently and prior to August 15, 1950, the individual plaintiffs took separate appeals to the county board, *R. S.* 54:3-21, as am. *L.* 1945, *c.* 125, alleging that the assessments upon their properties had been computed "according to a standard of value different from and higher than the standard used by the Township of North Bergen in assessing other types of property" within the taxing district resulting in "an unconstitutional discrimination" against the property owners. The relief requested signals the importance of the question:

"Your petitioner * * * prays that said assessment at true value be reduced to the same level and standard of value used in levying assessments on other types of property in said taxing district."

The county board, after consolidating the appeals for hearing decided that the plaintiffs had not sustained the burden of showing an unconstitutional discrimination. This burden was conceived to be proof of an "intentional systematic undervaluation" and "an intentional violation of the essential principle of practical uniformity." The record before us indicates that the board was clearly of the opinion that the relief sought might be afforded in a proper case.

Thereafter, and before December 15, 1950, the plaintiffs separately appealed to the Division of Tax Appeals alleging discrimination and requesting the same relief advanced before the county board.

The Division never heard these appeals, and similar proceedings were initiated by the plaintiffs in 1951, 1952, 1953, and 1954. In each year the decision of the Hudson County Board has been the same and in each year plaintiffs appealed to the Division of Tax Appeals praying for the same relief as that requested in 1950.

In November 1954, no hearing having been conducted by the Division, North Bergen moved to dismiss so much of the petitions of appeal as were based upon the prayer for relief seeking a reduction below true value on two grounds, first, because the petitions did not allege a basis for the relief, and secondly, because the Division was without

authority, at least under *R. S.* 54:2–39, as am. *L.* 1954, *c.* 115, to afford the requested remedy. The motion was granted, the Division being of the opinion that it had no jurisdiction to grant the requested relief. That the Division was somewhat uncertain about its action in this regard is indicated by the fact that in November 1952 a similar motion was advanced by North Bergen and denied.

The question involved is narrowed to this inquiry: May the Division of Tax Appeals remedy a discriminatory assessment at true value by reduction thereof to the common ratio employed in levying assessments throughout the same taxing district?

The basic statutory law was enacted under the *Constitution of* 1844 of this State, specifically *Art.* IV. *Sec.* VII, *par.* 12 (as added, election September 7, 1875, proclamation September 28, 1875) which provided: "Property shall be assessed for taxes under general laws * * * according to its true value." *R. S.* 54:4–23, as am. *L.* 1942, *c.* 281 and *L.* 1943, *c.* 120, directs the assessor to determine the "full and fair value" of all the real property in his district "at such price as, in his judgment, it would sell for at a fair and *bona fide* sale by private contract." This is a true value standard which is generally determined by the value the property has in exchange for money, *City of Newark v. West Milford Township,* 9 *N. J.* 295 (1952); *cf. Hackensack Water Co. v. Division of Tax Appeals,* 2 *N. J.* 157 (1949). We have recognized the statutory duty upon the party charged with assessment to apply the true value standard. *Delaware, L. & W. R. Co. v. City of Hoboken,* 10 *N. J.* 418, 433 (1952).

The new Constitution worked no change in the statutory standard for it speaks only in terms of equality, leaving the denominator at which this is to be attained to legislative determination. 1947 *Constitution, Art.* VIII, *Sec.* I, *par.* 1 provides, *inter alia*:

"Property shall be assessed for taxation under general laws and by uniform rules. All real property * * * shall be assessed according to the same standard of value; * * *."

The Legislature has not disturbed the provisions which call for true value assessment, but the dominant principle now is equality of treatment and burden, the standard employed is but the level on which the objective is to be realized. *Baldwin Construction Co. v. Essex County Board of Taxation*, 16 *N. J.* 329, 340 (1954). The failure to reach a uniform state of equality at true value is probably due to the frailties of human nature.

In *Baldwin Construction Co. v. Essex County Board of Taxation, supra,* we held that taxpayers who were visited with discriminatory assessment burdens might seek relief in the courts of this State in accordance with the principles laid down in *Hillsborough Township v. Cromwell,* 326 *U. S.* 620, 66 *S. Ct.* 445, 90 *L. Ed.* 358 (1946), thus overruling the doctrine of *Royal Mfg. Co. v. Board of Equalization of Taxes,* 76 *N. J. L.* 402 (*Sup. Ct.* 1908), affirmed 78 *N. J. L.* 337 (*E. & A.* 1909) which placed an insuperable task upon an aggrieved taxpayer to himself seek an upward revision of all other assessments in his district to true value. In obeisance to the requirements of the Fourteenth Amendment to the Federal Constitution and the mandate of equality in property assessment of the new State Constitution we assured relief against discriminating treatment although it occurred below the true value level. The dominant consideration was recognized to be equality of burden which by virtue of its constitutional foundation must override the statutory standard where the latter has not been manifested in fact to achieve equality.

The present issue, which was not squarely decided in the *Baldwin* case, *supra,* is wether the administrative agencies must also apply the rule of dominant equality in affording relief in their *quasi*-judicial capacities?

■■ The *fact* of discrimination against a complainant taxpayer may be determined by the state agencies. *R. S.* 54:3–21, as am. *L.* 1945, *c.* 125; *R. S.* 54:2–35, as am. *L.* 1946, *c.* 161; *R. S.* 54:2–39, as am. *L.* 1944, *c.* 240, *L.* 1946, *c.* 161, *L.* 1954, *c.* 115; see *Jersey City v. Division of Tax Appeals,* 5 *N. J. Super.* 375, 384 (*App. Div.* 1949),

affirmed 5 *N. J.* 433 (1950). It is difficult to conceive of a more prevalent grievance arising from abuse of the assessment process. It is equally clear that the fact of discrimination cannot be erased for lack of a remedy whether it occurs above or below the true value standard.

North Bergen emphasizes the determination of the Appellate Division in *Baldwin Construction Co. v. Essex County Board of Taxation,* 28 *N. J. Super.* 110 (*App. Div.* 1953). That case dealt with the procedural aspects of the *Baldwin* litigation which we later decided on the merits, *Baldwin Construction Co. v. Essex County Board of Taxation,* 16 *N. J.* 329 (1954). The tax board and city had sought a dismissal of the plaintiffs' action on the ground that administrative remedies had not been exhausted, to which reply was made that the agencies were without authority to grant relief unless the assessments complained of were above true value. The Superior Court, Appellate Division, held that the plaintiffs were not required to initially address the agencies because the latter were without authority to afford relief, at least "in the present posture of the case," which concerned 1952 assessments. When the litigation reached this court the procedural aspects were presented, but we went no further in this regard than deciding that "judicial interposition may be had for the correction of the wrongful discrimination" and that administrative remedies need not be exhausted where a redress of grievance by the courts appears "in the interest of essential justice." (*Baldwin Construction Co. v. Essex County Board of Taxation, supra,* 16 *N. J.,* at *page* 343). We neither affirmed nor denied agency authority to remedy matters of discrimination.

The Appellate Division determination is clearly adverse to plaintiffs' contention here. But they argue that the recent opinions of this court in *City of Passaic v. Passaic County Board of Taxation,* 18 *N. J.* 371 (1955), and *Borough of Little Ferry v. Bergen County Board of Taxation,* 18 *N. J.* 400 (1955), indicate recognition that the taxing authorities may *equalize* assessments at a level below true value and, this being so, the same authorities must reduce *individual*

assessments where equality can only be obtained at a point falling short of the statutory standard. Equalization of the aggregates, although related by necessity to individual assessment, operates in a different mathematical sphere. Its purpose is to distribute the county burden equally among the taxing districts, and to achieve this it is first necessary to revise the individual aggregates submitted by the districts to a figure that will reflect a common ratio of 100% of true value. Whether the burden is then distributed upon a basis of 50% or 100% of true value will not undermine the requisite of equality, for equality has already been es· tablished according to the statutory direction so far as the districts within the county are concerned. *R. S.* 54:3–17.

The *Passaic* case is important in other respects to the present question however. Mr. Justice Brennan, in a sedulous consideration of equalization of the aggregates, made this significant statement:

"It thus appears that equalization by the aggregate method is at best a substitute for local assessments at true value, adopted for the express purpose of defeating the results of competitive undervaluation. The extent to which it achieves its ends is necessarily dependent upon the precision with which the average assessment ratios reflect the average degree of undervaluation." *City of Passaic v. Passaic County Board of Taxation, supra,* 18 *N. J.,* at *pages* 381, 382.

A citation from the 1953 *Sixth Report of the State Tax Policy Commission, page* 141, was employed by Justice Brennan in support of his conclusion:

" 'The assessors' experience everywhere has proved that supervision or any other device cannot substitute for a good original assessment by the local assessor. * * * everyone has recognized that this costly and sometimes disappointing procedure (equalization of aggregates) cannot substitute for competent and effective local assessors who give continuous attention from year to year to the problem of equality of taxation.' " *City of Passaic v. Passaic County Board of Taxation, supra,* 18 *N. J.,* at *page* 381.

■ Equalization by the aggregate method is legislative recognition that local assessors do not always perform their

duties as required by statute. *R. S.* 54:3–17 requires the county board of taxation to ascertain *the general ratio or percentage of full value* at which the real property of each taxing district is assessed. It is then to prepare an equalization table indicating the aggregate assessments of each taxing district and the ratio by which each district aggregate is to be increased to reflect true value, and in this manner to obtain a revised aggregate for each district reflecting true value.

■ Although the equalization process does not work individual revision to true value, *Borough of Totowa v. Passaic County Board of Taxation*, 5 *N. J.* 454 (1950), it is indicative of the legislative intent that equality is to be achieved though assessments fall below the standard required. We are thus of the opinion that the statute itself reflects the rule of equality as a predominant factor, and that this principle which was approved in *Baldwin Construction Co. v. Essex County Board of Taxation*, 16 *N. J.* 329 (1954), is not antagonistic but consonant with the meaning and philosophy of the taxing statute and the manner in which remedies are to be effected.

■ A taxpayer feeling discriminated against by the assessed valuation of other property in the district in comparison with his own assessment may appeal to the county board of taxation, *R. S.* 54:3–21, as am. *L.* 1945, *c.* 125. Determinations or judgments made by the county board may be appealed to the Division of Tax Appeals, pursuant to *R. S.* 54:2–35, as am. *L.* 1946, *c.* 161, or *R. S.* 54:2–39, as am. *L.* 1944, *c.* 240, *L.* 1946, *c.* 161, *L.* 1954, *c.* 115. The Division is to "give such judgment therein as it may think proper." *R. S.* 54:2–35. Although *R. S.* 54:2–39 directs that the petition shall seek relief by a general prayer that the assessment be increased or decreased to the true value of the property in question, there is no mandate that relief of the *Baldwin* variety cannot be rendered. If interpreted otherwise the entire statutory appeal is rendered impotent to persons aggrieved through failure of a local assessor to perform his statutory duty. The statutory ap-

pellate procedure and remedy must accommodate the constitutional requisite.

■ It is to be noted that we are not called upon to assay administrative deficiencies in the assessment process but rather the *quasi*-judicial function of the Division of Tax Appeals in affording relief to persons aggrieved thereby. The words of Mr. Justice Heher, speaking for this court in *Baldwin Construction Co. v. Essex County Board of Taxation, supra,* 16 *N. J.,* at *pages* 344–345, are apropos to this observation:

> "If the assessing authority fails in its peremptory duty under the Constitution and laws, then resort may be had to the remedies appropriate to the particular default. Here, we redress the injury sustained by plaintiffs; this is the only justiciable controversy before us; we are not concerned with administrative deficiencies in no way vital to that inquiry."

The administrative determination on jurisdiction is reversed. The cause will be remanded to the Division of Tax Appeals for prompt consideration of the plaintiffs' alleged grievances.

No costs will be allowed to any party.

BRENNAN, J. (concurring). Whether the failure to make assessments at true value is "due to the frailties of human nature" or other reasons, the day has certainly arrived when officials at all levels of the administrative process are utterly without a defense to continue the practice.

I fully agree that the dominant principle of assessment is "equality of treatment and burden"; but the statutory scheme contemplates the achievement of that equality through local assessments at true value, and the duty of assessors and those concerned with the revision function is to assess at true value. I recognize, as I did in joining with the Chief Justice in his dissent in *Baldwin Construction Co. v. Essex County Board of Taxation,* 16 *N. J.* 329, at *page* 346 *et seq.,* that, in this case also, as a practical matter, it would be impossible without untoward results to enforce the true value statutes for the tax year 1950, here in question.

But the assessment process is an annual occurrence and that process is now in its initial stages for the tax year 1956. Whatever merit there may formerly have been in the excuse of assessment officers and county boards of taxation that inadequate personnel and insufficient financial support left them helpless to perform their statutory functions of making original assessments at true value, that excuse is now empty in light of the work of the Director of the Division of Taxation in collecting true value data in all the taxing districts of the State for the purpose of constructing a table of equalized valuations upon which state school aid is apportioned among the municipalities. *N. J. S. A.* 54:1–35.1 *et seq.* There is now a wealth of material in the Director's files which local assessors and county boards of taxation may, and should, consult for leads as to the accuracy of local assessments in terms of true value. Any local assessor who does not consult that material as to his municipality in the preparation of his 1956 duplicates before their submission to the county board of taxation before January 10, 1956, and any county board of taxation which does not consult the material for the municipalities in its county before completing the revision of duplicates and returning them to the local assessors by May 1, 1956, certainly runs the risk of the well-founded suspicion that they have deliberately and consciously failed to perform their statutory function if it later develops that the duplicates reflect a general pattern of assessment at less than true value. True, the Director does not collect value data for every property but uses sampling techniques which are useful for application on a mass basis. We have recognized, however, that the goal of true value assessments for every property does not demand tailor-made appraisals, *City of Passaic v. Passaic County Board of Taxation,* 18 *N. J.* 371, 395 (1955). No one identified with the assessment process will deny that a substantial approximation of the true value standard can be reached if those charged with the statutory duty will only use the tools at hand and make a determined effort to accomplish the result.

There are doubtless methods for doing the job superior to those employed by the Director, but at the least conscientious local assessors and county boards of taxation should be quick to avail themselves of the product of the Director's labors to improve their own performance if other equally good or better material is not at hand.

I am certain also that many county boards of taxation have themselves collected much material to supplement the data collected by the Director. They must certainly be in a better position than in the past to check on the duplicates of delinquent local assessors which exhibit the failure of the assessors to do this sworn duty. If equality of local assessment and burden through assessments at true value is the objective, and definitely it is, it is not enough that the Director and the county boards of taxation may take steps to remove from office local assessors who "willfully or intentionally fail, neglect or refuse to comply with the constitution and laws of this State relating to the assessment and collection of taxes," *R. S.* 54:1–36, *R. S.* 54:1–37, as amended by *L.* 1953, *c.* 51. The use of that sanction will not excuse the failure of the members of the county boards of taxation from consulting the material at hand to revise the duplicates to show assessments at true value, which it is their duty to do under *R. S.* 54:4–47, as amended by *L.* 1947, *c.* 413.

And the Director himself has the responsibility under *R. S.* 54:1–26 to order the local assessors in a proper case to make a re-assessment of any property undervalued, or a re-assessment of all property in the taxing district; a proper case is clearly presented when the data collected by the Director reveals that the duplicates of any particular taxing district reflect a serious breach of duty by the local tax assessor. In the *Baldwin* case, and again in this case, this court has not found it possible, within the justiciable controversies before us, to deal with the admitted failures of statutory duty at all levels. But Mr. Justice Burling has repeated in his opinion here the observation of Mr. Justice Heher in the *Baldwin* case that "If the assessing authority

fails in its peremptory duty under the Constitution and laws, then resort may be had to the remedies appropriate to the particular default." This is a reminder to citizens and taxpayers generally that, if the assessing authorities repeat for 1956 the indefensible unfairness and discrimination which result from the fixing of assessments at less than true value, they have it within their power to force the hands of assessing officials through a proceeding in lieu of prerogative writ or other appropriate action looking to a court order compelling their compliance. There is ample time for such a proceeding before the duplicates become final on May 1, 1956.

VANDERBILT, C. J., joins in this concurring opinion.

*For reversal and remandment*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

WACHENFELD, J., concurring in result.

*For affirmance*—None.