92 N.J. Super. 338 (1966)
223 A.2d 359
THE BOARD OF TAXATION OF ESSEX COUNTY, PLAINTIFF,
v.
TOWN OF BELLEVILLE IN THE COUNTY OF ESSEX; NUNCIO R. PICO, MAYOR OF BELLEVILLE; RALPH A. CASALE, JAMES R. GOLDEN, WILLIAM H. CULLEN, AND ROBERT E. WESTPY, INDIVIDUALLY AND AS MEMBERS OF THE MUNICIPAL COUNCIL OF BELLEVILLE; JOHN R. BURNETT, MUNICIPAL MANAGER OF BELLEVILLE; AND PETER A. TORRE, JR., TAX ASSESSOR OF BELLEVILLE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 10, 1966.
*339 Mr. Leon Samuel Wilson for plaintiff (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
Mr. Thomas D'Avella for defendant Torre.
Mr. Jack J. Soriano for remaining defendants.
CONKLIN, J.S.C.
This matter came on for hearing on cross motions for summary judgment pursuant to R.R. 4:58-1,2. The facts of the case were not disputed. The Essex County Board of Taxation sought by a civil action in *340 lieu of prerogative writs pursuant to R.R. 4:88-4, to compel the tax assessor and the town council of Belleville, together with its mayor and municipal manager, to revalue the taxable real property within the municipality. This revaluation was deemed necessary by the county board of taxation in order to bring the assessed value of property more nearly in line with its market value and thereby achieve a 100% valuation. In opposition, the town council denies the power and authority of the county board of taxation to specifically order anyone but the tax assessor to revalue the taxable real property of the municipality.
It further appears that on December 18, 1964 Joseph Solimine, secretary of the Essex County Board of Taxation issued an order from that board directing the tax assessor to proceed with revaluation. There is no issue raised as to the bona fides of the tax assessor in attempting to correct the situation. The proof offered tends to establish that he was operating under a revaluation carried out in Belleville in 1957 and that since that date he has used acceptable methods to determine the present tax imposed.
From these facts, then, there emerges the sole novel question of law as to whether the Essex County Board of Taxation can, by application to this court for the issuance of mandamus, compel the town council and tax assessor of Belleville to appropriate monies and so furnish the aid needed to carry out a revaluation in that municipality.
Neither party raises any dispute as to the facts. It is well settled in this State that when there are no facts in dispute and the only issue before the court is one of law, the matter is properly a subject for summary judgment. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954); Felbrant v. Able, 80 N.J. Super. 587 (App. Div. 1963).
The relief requested is the issuance of a prerogative writ of mandamus. Mandamus is an extraordinary remedy at law used to compel a municipal or public official to exercise a duty imposed by law. While the very essence of the power *341 provided by the issuance of mandamus is to compel action, nevertheless the writ cannot, under our law, be used to force the mode or manner in which a discretionary procedure must be accomplished; rather, the sole function in situations such as here present is to force the use of that discretionary power. Roberts v. Holsworth, 10 N.J.L. 57 (Sup. Ct. 1828); Switz v. Middletown Twp., 23 N.J. 580 (1957).
The unequivocal power to tax is found in Art. VIII, Sec. I, Par. 1 of the New Jersey Constitution, 1947. Art. VIII provides that "property shall be assessed for taxation under general laws and by uniform rules." While the direct power comes from the Constitution, the body historically charged with the function of promulgating general laws and uniform rules is the Legislature. Art. IV, Sec. I, Par. 1. It is its prerogative to exercise the duty imposed by the Constitution. By statute, the Legislature has created county boards of taxation to aid in the collection and distribution of taxes. These boards are necessarily limited by the powers conferred upon them by the Legislature.
In a broad grant of power the Legislature has delegated to these boards of taxation authority to act so that they may "in general do everything necessary for the taxation of all property in the county [equally] at its taxable value." N.J.S.A. 54:4-47. In addition, as a further delegation of the broad sweep of its power of taxation, the Legislature clearly enunciated the duty to be performed by the tax assessor.
"The assessor shall * * * determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1 next preceding the date on which the assessor shall complete his assessments." N.J.S.A. 54:4-23
In delineating the power of the county board of taxation over the local assessor the Legislature specifically set forth in N.J.S.A. 54:3-16 that the board "shall have supervision and control over all officers charged with the duty of making assessments for taxes in every taxing district in the *342 county." Thus, it appears beyond dispute that the Legislature not only delegated authority over the tax assessor to the county board but similarly empowered the tax assessor to make the necessary assessments in his taxing district.
Similarly, as a part of the general scheme of taxation, the Legislature has commanded that each municipality shall cause to be paid over to the county treasurer all taxes, both county and state, which shall be assessed in that municipality for the current tax year. N.J.S.A. 54:4-74.
With these basic elements before us, then, what appears is a broad general scheme of taxation designed to insure the prompt and efficient implementation of the state-wide taxing program. As the facts clearly indicate, this general scheme has broken down in the instant case. The statutory authorization as constructed by the Legislature requires cooperation and interdependence of action from the highest level of government to the municipal officials throughout the State.
In interpreting the language granting powers to the county boards of taxation, the court in Baldwin Construction Co. v. Essex County Board of Taxation, 28 N.J. Super. 110 (App. Div. 1953), stated that the boards are "creatures of the Legislature and have only the powers conferred upon them by the express language of the statute or by necessary implication therefrom." This statement clearly sets forth the traditional interpretation of a statutory grant of powers, in that it has long been recognized that the Legislature does not need to delineate operative power for every contingency which would face the board. Such is the situation in the instant case: the board of taxation, while clearly being given the duty above mentioned and with power over the tax assessor granted by statute, is charged with the obligation of implementing the state tax program. It must be realized from the configuration of the taxing program that to allow the tax board only those powers specifically delineated, and to afford it no remedy in the case of a recalcitrant municipality, is to effectively render that board impotent.
*343 Highly indicative of the approach which the highest court of this state took in a related matter is the case of Switz v. Middletown Twp., 23 N.J. 580 (1957). In that action by a taxpayer to force the municipality to revalue its taxable real property at 100% of true value, Justice Heher set forth the action taken by the lower court, part of which was the following:
"The defendant township was ordered to `appropriate in accordance with law, such monies as may reasonably be necessary and required by it and by' the defendant assessor * * *."
While the majority of the court never directed itself to the specific question presented by this order of the lower court, it did, nevertheless, affirm the order with the sole apparent modification being a two-year delay so that the Legislature could take appropriate action. It is, therefore, reasonable to assume that the court, once having stated the order in its opinion, would have addressed itself to the problem had it felt that this portion of the order was in need of review.
The essential purpose of any order for revaluation is to achieve tax equality not only among members of a given taxing district but similarly between municipalities of the same county. It is to achieve this end that the present action of the board of taxation is directed.
It is essential at this juncture to set forth the pertinent facts contained in the affidavit of Joseph Solimine, which, since they were not controverted by opposing affidavit or evidence, must be taken as true.
"16. The said Tax Assessor of Belleville has, on many occasions since February 1963, let it be known to the County Board of Taxation that in his professional opinion the complete revaluation of his Town's ratables was and is necessary; however, he explains his failure to undertake such a program claiming that the municipal government of Belleville refused to make available the necessary funds for this project.

* * * * * * * *
* * * the Board found as fact:
*344 (a) The said Tax Assessor has used reproduction cost statistics without change from 1957 to the then current year (and indeed, to date);
(b) The said Tax Assessor has disregarded bona fide sales within the taxing district and has failed to correct assessments where the ratio of assessments to sales price (as revealed in the public record of the Division of Taxation known as the Director's Sales Ratio Study) indicated the necessity of a revaluation of said assessments;
(c) The revaluation figures as recorded in the tax duplicates filed by the said Tax Assessor in 1958 have not been kept current and revised in accordance with the subsequent development and change; and all these practices in the opinion of the Board have resulted or will result in a pattern of assessment not uniform and in a failure to assess at 100% of true value according to law and which as a result has caused and will cause an inequitable distribution of the burden of taxation.
19. A statistical analysis of the reported sales of real property in the Town of Belleville during 1965 and the first quarter of 1966 reveals that whereas Class 2  residential property  is assessed at between 60 and 80% of true value, Class 1  vacant land  is assessed at between 20 and 40%, a lesser percentage of true value, and Class 4  industrial and commercial property  is assessed at between 80 and 100% of true value, a greater percentage, thus casting a disproportionately great share of the burden of taxation upon owners of commercial-industrial property and a disproportionately small share of this burden upon the owners of vacant land."
In this endeavor the tax board is doing no more than performing the duty imposed by law and set forth above.
A converse of the situation presented in this case was dealt with by the court in Ridgefield Park v. Bergen County Board of Taxation, 31 N.J. 420 (1960). There the taxpayers of one municipality sought by mandamus to compel the board of taxation and tax assessors of the other municipalities in the county to revalue at 100% of true value in order to equalize the burden of supporting the government. The Supreme Court allowed such an action if plaintiff-taxpayers could prove that the assessors had not done their job. Here the situation is basically the same. There is no dispute that under law the tax assessor had done what he could without revaluation. The county board now seeks to perform those duties imposed upon it by law. The board seeks to equalize what is presently an unequal burden of taxation and compel a dissenting municipality to appropriate funds to that end.
*345 Finally, it must be recognized that the situation before the court today is unlike any heretofore presented for judicial action. We are not dealing with a long-standing refusal to appraise property at 100% of true value nor is this a case of the refusal of a tax assessor to act in accordance with law in the exercise of his duties. Instead, we are asked to rule on the refusal of a municipality to cooperate financially in bringing the assessed value of its taxable property up to a current valuation of 100% of true value. If this situation were permitted to persist it is perfectly conceivable, on the basis of Ridgefield Park v. Bergen County Board of Taxation, supra, that a taxpayer in an adjoining community burdened with the same duty of supporting governmental activities through taxation, could sue the tax assessor and the board of taxation as well as the municipality involved in order to force equalization of the tax burden.
The county board is here seeking, by affirmative action, to alleviate the existing inequality by securing a 100% true valuation through effective revaluation.
It may arise that as a result of the present situation legislative action will need to be taken. Realistically, however, the general scheme of taxation leads to a clear implication that the county board of taxation does possess the power now sought to be exercised. Further delay will only cause continuance of already existing inequality. One municipality should not, because of its refusal to revalue its taxable real property, enjoy the fruits of government while simultaneously sharing a proportionately smaller portion of the burden.
It is therefore ordered and adjudged as follows:
1. Defendant Town of Belleville shall take all steps necessary, including the appropriation of the necessary monies, to effectuate a revaluation of all the taxable real property within the town.
2. The method to be used for such revaluation shall be the decision of the Town of Belleville, provided that such method be consistent with law.
*346 3. The tax assessor of the town shall render all aid and assistance in the completion of the ordered revaluation.
4. The time for the completion of the total revaluation is fixed at one year from the close of the current tax year.
5. This court does hereby specifically retain jurisdiction of the within entitled cause of action as to all parties designated, for the purpose of obtaining compliance with this order.
Let an order be entered.