104 N.J. Super. 499 (1969)
250 A.2d 440
BERGEN COUNTY BOARD OF TAXATION, PLAINTIFF,
v.
BOROUGH OF BOGOTA, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 17, 1969.
*501 Mr. Charles H. Landesman for plaintiff (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
Mr. V. Michael Rossi for defendants Borough of Fairview and John LaMarca, Carmine Pellechio and Patrick DeSena, members of the borough board of assessors.
Mr. Ralph W. Chandless for defendants City of Garfield and Philip Gannuscio, its tax assessor (Messrs. Chandless, Weller & Kramer, attorneys).
Mr. John J. Cariddi for defendants City of Hackensack and Russel T. Wilson, its tax assessor.
SIMPSON, J.C.C. (temporarily assigned).
The Bergen County Board of Taxation brought this action in lieu of prerogative writs, in the nature of mandamus, to compel the governing bodies and tax assessors (or boards of assessors, as appropriate) of seven municipalities to comply with its orders of August 18, 1967, the significant thrust of which were to require complete revaluation programs whereby each parcel of real estate in the respective municipalities would be appraised. Most of the facts were stipulated, and the testimony of the only witness, Dante Leodori, secretary of the Bergen County Board of Taxation, was undisputed. *502 Consent orders for revaluation were entered with respect to four boroughs, so that the trial proceeded against only the Borough of Fairview, and Cities of Garfield and Hackensack. Because of the passage of time, plaintiff amended its complaint to require the revaluations to be effective for the year 1970 instead of 1969.
Pursuant to N.J.S.A. 54:4-2.27 plaintiff has established the percentage level of taxable value of real property for assessment purposes in Bergen County at 100% of true value. It also has made continuing studies and determined "average assessment ratios" and "coefficients of deviation" for the 70 municipalities in the county. An "average assessment ratio" is an average of percentage ratios of assessed values to selling prices, while a "coefficient of deviation" is the ratio of the average deviation to the average assessment-sales ratio. The figures are not disputed, and for the three municipalities were as follows:

 Average Assessment Coefficient of
Municipality Ratio Deviation
Fairview 72.59% 21.00%
Garfield 82.84% 19.26%
Hackensack 84.42% 16.12%

Plaintiff then decided that municipalities would be ordered to proceed with revaluation programs where their average assessment ratio was less than 85% and their coefficient of deviation exceeded 10%. By the time of the trial, figures were available for a subsequent sampling period, but in none of the three municipalities did the average assessment ratio reach 85%, and in all three the coefficients of deviation were in excess of 10%. Although plaintiff acted in a formal manner, with minutes and resolutions supporting its actions and orders, there has been no approval by the Director of the Division of Taxation, Department of the Treasury, State of New Jersey (hereinafter "Director") of either the orders to revalue or the 85% and 10% figures which were the basis for the orders. On the other hand, the "Rules of the Bergen *503 County Board of Taxation" have been so approved, including rule XIV which provides as follows:
"The Assessor or Secretary of the Board of Assessors of any taxing district which has commenced a revaluation or reassessment program, shall submit to the Secretary of the County Board of Taxation reports of the progress of the revaluation or reassessment program at intervals of not less than every thirty days."
Plaintiff introduced into evidence chapter VIII of the Handbook for New Jersey Assessors (issued by the Local Property Tax Bureau, Division of Taxation, February 1964, as revised July 1965), entitled "Revaluation Programs". The following statement appears at page 203:
"A coefficient of deviation of less than 20 percent is usually considered good."
Confronted with this, Leodori, testified that the handbook was outdated and he and the Bergen County Board of Taxation felt that a 10% coefficient of deviation was applicable to Bergen County conditions.
The history of New Jersey's real property tax assessment problems is detailed in Switz v. Middletown Tp., 23 N.J. 580 (1957), and Village of Ridgefield Park v. Bergen Cty. Board of Taxation, 31 N.J. 420 (1960), and the public interest in and constitutional requirement of uniform assessment of all real property within a county is no longer open to question. These landmark cases, together with Board of Taxation of Essex Cty. v. Town of Belleville, 92 N.J. Super. 338 (Law Div. 1965), affirmed 95 N.J. Super. 327 (App. Div. 1967), make it clear that uniform assessment will not be thwarted by procedural niceties concerning mandamus or the recalcitrant refusal of municipal officials to pay for the cost thereof. The powers of plaintiff, however, as a county board of taxation created by the Legislature, are limited to those conferred by statutes or necessary implication therefrom. Baldwin Constr. Co. v. Essex Cty. *504 Board of Taxation, 28 N.J. Super. 110, 116 (App. Div. 1953), affirmed 16 N.J. 329 (1954). Plaintiff contends it has the power to order complete revaluations by municipalities, relying upon N.J.S.A. 54:3-13, 54:4-47 and the Belleville case, supra; while defendants say the orders are unenforceable because they lack approval of the Director (referred to in some of the statutes as "State Tax Commissioner") required by N.J.S.A. 54:3-14 and 54:3-16. The statutes are as follows:
"54:3-13. Secure taxation at taxable value
Each county board of taxation shall secure the taxation of all property in the county at its taxable value as prescribed by law, in order that all property, except such as shall be exempt by law, shall bear its full and just share of taxes."
"54:4-47. Revision and equalization; functions of county board
The county board may adjourn from time to time in the discharge of its duties, and may, after investigation, revise, correct and equalize the assessed value of all property in the respective taxing districts, increase or decrease the assessed value of any property not valued at its taxable value, assess property omitted from any assessment, as provided by law, at its taxable value, and in general do everything necessary for the taxation of all property in the county at its taxable value."
"54:3-14. Records, rules and orders
Each board shall keep a full record of its proceedings, and, subject to the approval of the state tax commissioner, may make all rules, regulations and orders not inconsistent with the rules, regulations and orders of the commissioner, and issue such directions as may be necessary to carry into effect the provisions of this title."
"54:3-16. Supervision of assessors; rules and regulations; approval
Each county board of taxation shall have supervision and control over all officers charged with the duty of making assessments for taxes in every taxing district in the county. Such officers shall be subject to, and shall, in making assessments, be governed by such rules, orders or directions as may be issued by the county board, in the enforcement of the objects of this title. Before making any such rules, orders or directions, the county board shall submit them to the state tax commissioner, and no rule, order or direction shall be considered adopted by the county board until approved by him."
Statutes relating to the same subject matter, both special and general, must be construed together as a unitary and harmonious whole, so that each will be fully effective. *505 City of Clifton v. Passaic Cty. Board of Taxation, 28 N.J. 411, 421 (1958). Viewed in this light, the approval of the Director is a prerequisite to a valid order by a county board of taxation to a municipality and its assessing officials to completely revalue its real property assessments. N.J.S.A. 54:3-13 is a broad generalization comparable to the mission paragraph of a typical military operations order, and is of no help in resolving the issue presented. Except for the last clause, "and in general do everything necessary for the taxation of all property in the county at its taxable value," N.J.S.A. 54:4-47 refers only to things the county board of taxation may itself do, rather than things it may order others, such as assessors or municipalities, to do. The rule of ejusdem generis therefore applies to the general words in the last clause of this statute, and being general words following specifically named things of a particular class (things it may do, such as "revise," "correct," "equalize," "increase," and "decrease" assessed values of properties) it must be understood as limited to things of the same class or general character, i.e., things it may do. Transcontinental Gas Pipe Line Corp. v. Dept. of Conservation, etc., 43 N.J. 135, 146 (1964); Denbo v. Moorestown Tp., 23 N.J. 476, 482 (1957). Even assuming, however, that this statute is a broad enough grant of power to include orders to others to revalue, it throws no light on the question of the manner of the exercise thereof.
N.J.S.A. 54:3-14 and 54:3-16, on the other hand, permit rules, regulations, orders and directions to emanate from county boards of taxation (the former as may affect all concerned, and the latter as affects municipal officers with the duty of assessing), subject to approval of the Director ("State Tax Commissioner"). These statutes are clear, have a plain meaning, and there is no room for judicial construction or interpretation. Watt v. Mayor, etc., of Franklin, 21 N.J. 274, 277 (1956); Albert F. Ruehl Co. v. Board of Trustees, etc., 85 N.J. Super. 4, 12-13 (Law Div. 1964). Plaintiff's recognition of the required approval appears by *506 its obtaining the same for its own rules, including rule XIV dealing with revaluation problems. No reason appears why approval should be required in connection with ministerial and perfunctory matters and not required for more important matters like an order for complete revaluation.
Notwithstanding the foregoing, plaintiff relies upon the Belleville case, supra, and this court is, of course, bound by the holding of the Appellate Division therein. The reliance, however, is principally upon the opinion in the Law Division. There are several reasons why the case is not dispositive of the issue in the present situation. First of all, appeals are taken from judgments and not opinions, Clark v. Wichman, 72 N.J. Super. 486, 494 (App. Div. 1962), and the Appellate Division's affirmance was based upon its construction of the mandate of that judgment: "* * * to direct the municipality and the assessor to perform their respective duties as prescribed by the applicable statutes." 95 N.J. Super., at p. 328. Although most of the facts of Belleville and the present case are similar, there are crucial differences. From the opinions in Belleville it does not appear that the issue of required approval by the Director of the county board of taxation's order to revalue was even raised. Furthermore, the assessor admittedly had failed to assess properly, had failed to correct proven assessment errors, and had himself indicated the need for revaluation. In the present case it was stipulated that the Director did not approve the orders to revalue, and this issue was raised by defendants. And although there are obviously variances of sales prices from assessed valuations, resulting in the reported average assessment ratios and coefficients of deviation, there is no showing of a complete breakdown in assessments and assessing procedures of the magnitude and scope found in Belleville.
Secondly, although the Belleville case is authority for the broad proposition that a county board of taxation may order revaluation and a municipality cannot prevent same by withholding required funds, this is not to say that the *507 power is absolute, unlimited, and beyond the control of the Director. I hold that the power is not only subject to his direction, but the exercise thereof requires his approval pursuant to N.J.S.A. 54:3-14 and 54:3-16. Such approval is not only necessary, it is desirable. Complete revaluations of the real properties of municipalities are expensive undertakings. As of January 10, 1969 there were 15,547 line items, or taxable properties requiring appraisal and study in the event of complete revaluation, in the three defendant municipalities. The Director's approval, either in specific cases or of a formula to determine the necessity of revaluation, will serve at least two salutory purposes. First, it will directly involve the expertize of the state agency which reports to the Legislature in the complex field of taxation. N.J.S.A. 54:1-13. Second, it will necessarily resolve the existing dichotomy between plaintiff and the Handbook for New Jersey Assessors, supra, as to whether a coefficient of deviation in excess of 10% or 20% indicates a need for revaluation.
Finally, plaintiff argues that revaluation should be ordered because the figures conclusively prove that defendants have not assessed each parcel at the required 100% of true value, so that neither approval by the Director nor even an order by plaintiff is necessary. The fallacy here is self-evident. A single sale of a piece of property at other than the exact assessment thereof will increase or decrease aggregate valuations to something over or under 100%. If this was the test, every municipality would have to revalue every property every year. Taxing statutes, like all others, will not be interpreted or construed in a manner leading to absurd or unreasonable results. Clifton v. Passaic Cty. Board of Taxation, supra, at p. 421; State v. Gill, 47 N.J. 441, 444 (1966).
Judgment for defendants.