EVERS, J.T.C.
In this action, which was commenced by an order to show cause, taxpayers seek an order as follows:
1. directing the county tax board and the City of Hackensack to revise and correct the city’s tax duplicate and to immediately certify the corrected duplicate;
2. restraining the county board from promulgating the table of aggregates until the tax duplicate is corrected;
2. directing the city to send out corrected tax bills;
4. directing the city to prosecute 1985 tax appeals against those property owners whose assessments should have been changed as a result of the corrections made in the duplicate;
5. directing the assessor and tax collector to maintain assessments at 10096 of true value in the future; and
6. ordering the city to appropriate sufficient funds to perform all of the foregoing[1]
Defendants have moved to dismiss the complaint.
Essentially the relief requested is a direction to the appropriate officials charged with the administration of local property taxes to immediately increase all assessments in the City of *460 Hackensack to true value. The problem arises, according to taxpayers, because since the 1978 revaluation, except for a few changes resulting from conversions and new and added construction, the assessor has carried all assessments from year to year at the revaluation level. By maintaining virtually all assessments in a state of repose taxpayers claim that they are, and will continue to be, discriminated against. Plaintiffs claim that the situation is not readily remediable by filing tax appeals (by plaintiffs against those properties whose assessments should be increased) because (1) of the time, expense and effort which would be involved; (2) because it would not produce the immediate relief to which taxpayers are entitled; and (3) such course of action shifts the burden to taxpayers to perform a duty which should have been performed by the city and county officials in the first instance.
Plaintiffs claim that the most patent proof that the city assessor is derelict in performing his duties is evidenced by reference to the useable sales studies of the Director of the Division of Taxation for 1978 through 1984 which reveal a substantial number of properties whose sales-price-to-assessment ratio is below the common level range established by chapter 123 of the Laws of 1973 (N.J.S.A. 54:51A-6). In particular, taxpayers assert that the assessment of the Continental Plaza cries out for investigation and adjustment.[2] According to taxpayers if this were done by the assessor in any of the years since 1981 it would have resulted in a substantially higher assessment for that and associated properties.
Plaintiffs suggest that the proper methodology to be employed in correcting the assessments is to select those properties in each of the years of the Director’s studies which fall below the common level range and multiply those sales prices by the applicable chapter 123 ratio for the year to generate the new assessment. Claiming that this concept is neither unfair *461 nor revolutionary, plaintiffs refer to the recent Supreme Court decision in Glen Wall Associates v. Wall Tp., 99 N.J. 265, 491 A.2d 1247 (1985) which approved the determination of value of land by means of a mathematical formula involving the chapter 123 ratio. In Glen Wall the court permitted an appraiser to give an opinion of the value of real estate by merely dividing the land assessment by the chapter 123 ratio. No other proofs of comparable sales or otherwise were required. This concept, according to taxpayers, bespeaks a confidence in the accuracy of the Director’s chapter 123 ratio and sanctions its use in the methodology suggested by plaintiffs. The argument continues that, if anything, the Supreme Court’s analysis is much more invidious and prejudicial than what plaintiffs suggest here. In Glen Wall the methodology of determining value by dividing the land assessment by the chapter 123 ratio is a process that is conducted at trial after which there is ordinarily very little opportunity for appeal. In the administrative process here under review, a similar methodology would still permit a taxpayer in a conventional tax appeal to present proofs concerning a different true value than that assumed by the sales price. In other words, here, there is an administrative opportunity for review that is, as a practical matter, absent where such a technique is used at trial. Thus, while the proposal may seem at first blush facile, it is analogous to the Glen Wall Associates concept and performs substantial justice as well, according to taxpayers.
While taxpayers may make some cogent arguments for the implementation of a revaluation in the city and although the court may be sympathetic to their plight, the relief which is sought must be denied for a myriad of reasons.
First, the request to direct the county board to correct the tax list, which list has already been certified, is barred by N.J.S.A. 54:4B-1 which states:
No proceeding before any administrative tribunal or before any court of this State or of the United States shall suspend the apportionment, collection or payment of county taxes, nor shall any official of any taxing district charged by law with such duty, fail to collect, or having collected, fail to transmit such *462 county taxes to the county treasurer or other county official authorized by law to receive them, by reason of the pendency of any such proceeding.
This provision clearly states that the apportionment, collection or payment of county taxes shall not be suspended. It contemplates that any finding of irregularity in the county apportionment scheme by a court can be corrected in the following year’s table of aggregates by a debit-credit procedure. N.J.S.A. 54:4B-2, -3, -4 and N.J.S.A. 54:4-49, -52.
The tax list reflects the ratable value of all taxable property in a municipality. A duplicate of the tax list is submitted by the county board to the municipal tax collector who is charged with the responsibility of preparing and submitting tax bills to the property owners. N.J.S.A. 54:4-64. Each tax bill reflects the tax rate per $100 of assessed value for various county, municipal and school budgets funded by the local property tax and indicates the total property tax payable by each property owner based on the established rates and the assessed value of the property. N.J.S.A. 54:4-48 to -52. Any restraint on the certification of the tax list would obviously result in a suspension of mailing tax bills and collecting property taxes, including property taxes necessary to fund the county budget. As such, not only would the City of Hackensack be affected, but so too would all other taxing districts in the county, all of whom contribute to the county budget. Therefore, even assuming that there is substance to plaintiffs’ complaint (discussed infra) the interests of the county, its 70 taxing districts and its over 800,000 residents must prevail.
Secondly, plaintiffs’ reliance on Baldwin Construction Co. v. Essex County Bd. of Taxation, 16 N.J. 329, 108 A.2d 598 (1954) in support of their claim of discrimination is misplaced. In Baldwin, where it made selected increases in assessments of properties, the county board’s actions were challenged in an action in lieu of prerogative writs in the Law Division. On appeal, the Supreme Court determined that the board’s actions were discriminatory and directed that the order revising the assessments be voided, which resulted in the reinstatement of the original assessments. Although the Court recognized that plaintiffs had failed to exhaust their administrative remedies *463 pursuant to N.J.S.A. 54:3-21 in challenging the county board actions, it nevertheless sustained the procedural framework of the case on the grounds that the in-lieu-of-prerogative-writs remedy appropriately provided the means for achieving equality in assessments. 16 N.J. at 343, 108 A.2d 598.
Subsequent to Baldwin, the Court in In re Kents, 34 N.J. 21, 166 A.2d 763 (1961), established the concept of the “common level” of assessments as a proper tool in according discrimination relief in property taxation. See also Siegal v. Newark, 38 N.J. 57, 63, 183 A.2d 21 (1962). This concept has since been legislatively enacted under chapter 123 (N.J.S.A. 54:3-22 and N.J.S.A. 54:51A-6) and judicially approved. Murnick v. Asbury Park, 95 N.J. 452, 471 A.2d 1196 (1984). At the time of the Baldwin decision, therefore, the present method for according discrimination relief had not yet been established. In subsequent decisions, the Supreme Court of New Jersey has clearly limited the precedential scope of the Baldwin case. For example, in Central R.R. Co. v. Neeld, 26 N.J. 172, 139 A.2d 110 (1958), cert. den. 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958), the court had occasion to consider the Baldwin decision:
In their brief the railroads cite Baldwin Construction Co. v. Essex County Bd. of Taxation, 16 N.J. 329 [108 A.2d 598] (1954), as a “prime example” of taxpayers being permitted to obtain judicial relief from discriminatory assessments without exhausting their administrative remedies. There the lower courts had retained jurisdiction because they doubted or denied that the administrative tribunal had any jurisdiction to remedy the discriminatory assessments by reducing them to a common level of assessment below true value. See 28 N.J.Super. 110 [100 A.2d 341] (App.Div.1953); 24 N.J.Super. 252 [93 A.2d 800] (Law Div.1952). On appeal we determined the merits without passing upon the exhaustion-of-remedies doctrine or the extent of the jurisdiction of the administrative tribunals. Thereafter we held, in an opinion by Justice Burling (Gibraltar Corrugated Paper Co. v. North Bergen Twp. [20 N.J. 213, 119 A.2d 135 (1955) ] supra), that the Division of Tax Appeals has the statutory power and duty to remedy a discriminatory assessment by reducing it to the common level of assessment below true value. The stated justification for the lower court’s “retention of jurisdiction in Baldwin has thus been removed and its holding furnishes no current support for the railroad’s” position here. [At 182-183, 139 A.2d 110|.
The holding in Baldwin, therefore, has been severely undercut and is of limited precedential value.
It is noteworthy that the Baldwin case involved an action in lieu of prerogative writs filed in the Law Division *464 while the present action has been filed in the Tax Court. The Tax Court does not have prerogative writ jurisdiction. Alid, Inc. v. North Bergen Twp., 180 N.J.Super. 592, 436 A.2d 102 (App.Div.1981), app. dism. 89 N.J. 388, 446 A.2d 126 (1981). The present action seeks direct review by the Tax Court of a county board action and, of necessity, is brought under N.J.S.A. 54:51A-la, (review of judgment, action or determination of county board of taxation) and is not an action in lieu of prerogative writs. Thus, even if the Baldwin case retains some measure of relevance, that decision does not apply in this instance where the matter is before the Tax Court in a different jurisdictional context.
Thirdly, the impropriety of this type of action, where plaintiffs seek a multiple revision of a tax list, was specifically established in Pleasantville Taxpayers v. City of Pleasantville, 111 N.J.Super. 377, 268 A.2d 342 (Law Div.1970), aff'd 115 N.J.Super. 85, 278 A.2d 229 (App.Div.1971), certif. den. 59 N.J. 268, 281 A.2d 530 (1971), in which plaintiff, a taxpayers’ association, challenged the assessment of 161 properties located within a particular sector of the municipality as discriminatory. The court, in dismissing the action, noted that the legislative scheme for litigating tax appeals was premised on the determination of property values on an individual basis and it was thus totally impractical to challenge assessments en masse:
This is especially true in this case where the circumstances surrounding the valuation of each property may be different and may raise different issues of fact for determination by the county board. For example, the plaintiffs allege that the tax assessor did not visit each property before making his assessment. This may be true as to some properties and may not be true as to others. Each taxpayer must present to the Board of Taxation the facts as they apply to his property, in order to obtain an individual determination. [111 N.J.Super. at 382, 268 A.2d 342].
A similar result is noted in J.H. Becker, Inc. v. Marlboro Twp., 82 N.J.Super. 519, 198 A.2d 463 (App.Div.1964), in which various plaintiffs filed suit against a county board of taxation as well as certain municipal defendants challenging the validity of recently revalued assessments. The court noted the danger in entertaining suits involving wholesale attacks on assessments:
*465 If the Law Division were to entertain the actions brought herein, it can readily be seen that plaintiffs could ask the court to review the entire assessment program of each municipality and call upon the assessors to justify hundreds, or perhaps thousands, of apparent discrepancies, for which the assessors probably have, at least in their judgment, justifiable answers. [Id. at 529, 198 A.2d 463]
The Becker court also recognized the impossibility of deciding individual property valuations in the context of mass appeals:
Such evidence does not necessarily indicate that assessments of real property were not made at true value, in accordance with a uniform standard as required by law. It is well settled that no single factor is controlling in ascertaining the value of real property. The size and shape of a tract of land, its topography and physical condition, its location, its accessibility to highways, the availability of public utilities, street frontage, value for a particular purpose and the use thereof, and comparative sales are among the many factors which can be considered in determining actual value. [Id. at 528-529, 198 A.2d 463]
Thus, because the question of property valuation relates to the individual factual circumstances of each property, mass appeals do not constitute a suitable manner for determining individual property assessments. Similarly, in Jersey City v. Tax Appeals Div., 5 N.J.Super. 375, 381-382, 69 A.2d 331 (App.Div.1949), aff'd o.b. 5 N.J. 433, 75 A.2d 865 (1950), which involved a mass discrimination appeal, the court asserted that the statutory administrative remedy involving individual tax appeals was the proper means for determining the correctness of property tax assessments.
The holding of these decisions, namely that tax appeals must be heard and decided on an individual basis, unquestionably applies to this action. At issue is the propriety of the county board’s determination resulting in the certification of the 1985 Hackensack tax list. In order to consider the correctness of the board action, each property on the list must be individually analyzed and each property owner must be notified and permitted to participate in such a hearing. Clearly, the present proceeding initiated by plaintiffs does not contemplate such a procedure and is, therefore, totally inadequate and improper.
Next, I note that the foundation of the formula by which plaintiffs would have the assessments increased is faulty. As *466 earlier noted, according to plaintiffs, the procedure would consist of the following:
1. Utilizing the sales-ratio study prepared by the Director, Division of Taxation for the October 1 table of equalized valuations, N.J.S.A. 54:1-35.1 et seq., the true value of each property sold (assuming such sale is useable) would constitute the true or market value of the property;
2. Applying the chapter 123 ratio to the sales price, each property subject to a useable sale would have its assessment revised in accordance with the average ratio and common level range standards of chapter 123 (N.J.S.A. 54:1—35b).
It is obvious that the technique suggested by plaintiffs would be unfair and unworkable. Initially it is appropriate to note that the decision in Glen Wall, supra, on which plaintiffs place great reliance in support of their formula, involved an individual property tax appeal and did not relate in any manner to a mass revision of a tax list. Glen Wall established certain evidentiary standards and standards of proof applicable to an appeal of income-generating property in which the parties relied on an income approach to value and then only in connection with the development of a rate of capitalization through the use of the building residual approach where the land value is first established. See American Institute of Real Estate Appraisers, The Appraisal of Real Estate (7 ed. 1978). Had an overall capitalization rate been used, in which instance the land value is not determined independently, the Court would never have been confronted with the question.
While Glen Wall did permit plaintiff, in the context of an appeal, to utilize the assessed valuation of the land as a reflection of its market value which could then be revised to the common level by application of the average ratio, the critical factor was the treatment by the Court of the land assessment as being reflective of its true value. However, the use of the land assessment, while sufficing to defeat a motion to dismiss for failure to prove the value of the land, does not rise to the level of actual proof of such value. Plaintiffs seek to use the sales prices of all useable sales in the Director’s sales-ratio study as being indicative of true value for such property and to revise such values by the average ratio. Although the Director’s study employs useable sales as reflective of the market *467 value of property for purposes of gauging the level of assessments to such market, that sales study is geared to determining an “average” level of assessments to the market. The Director’s sales study, therefore, is not aimed at setting the true value for individual properties for assessment purposes. See Willingboro Tp. v. Burlington County Bd. of Taxation, 62 N.J. 203, 208, 300 A.2d 129 (1973). However for purposes of determining the value of an individual property, the sales price may or may not be determinative of actual value. Such an analysis must incorporate various factors relating to the sale and other methods of valuation must also be considered. See, e.g., Almax Builders, Inc. v. Perth Amboy City, 1 N.J. Tax 31, 38 (Tax Ct.1980); Linwood Properties, Inc. v. Fort Lee, 7 N.J.Tax 320 (Tax Ct.1985). Clearly, therefore, the sales price of a useable sale is not necessarily the true value of the property for assessment purposes.
I next note that the formula suggested by plaintiffs to increase assessments is totally selective and discriminatory in itself as only such properties that are the subject matter of a useable sale would be subject to an assessment revision. That approach would not incorporate any attempt to utilize such sales as representative of the market value for other properties. The assessments of all other properties whose values may have increased but which were not sold would not be revised. From an assessment standpoint such an approach is clearly unfair and inconsistent with the uniformity standards of N.J. Const. (1947), Art. VIII, § I, par. 1(a). Therefore, the procedure suggested by plaintiffs for revising the 1985 Hackensack tax list is unfair and improper.
Lastly, the relief sought by plaintiffs which is nothing more or less than a mini-revaluation, is being provided on a prospective basis.
Since the first allowance of the remedy of mandamus to correct inequities of assessment practices in Switz v. Middletown Twp., 23 N.J. 580, 130 A.2d 15 (1957), the responsibility of the boards to secure the maintenance of real property assessments at taxable value has been the subject of judicial attention *468 and definition. In both Switz, where a property owner prevailed in an action in lieu of mandamus to compel reassessment against the municipality in which the property was located, and in Ridgefield Park v. Bergen Cty. Bd. of Tax., 31 N.J. 420, 157 A.2d 829 (1960), app. dism. 365 U.S. 648, 81 S.Ct. 834, 5 L.Ed.2d 857 (1961), where a municipality and several of its taxpayers were allowed to maintain a similar action against other municipalities within the county, county boards were joined as defendants. In neither case, however, did the Supreme Court regard the county boards, which are essentially supervisory bodies with respect to the proper maintenance of assessment rolls, as the appropriate agencies to . actually conduct municipal revaluations. That duty, the court declared in Ridgefield Park, lies squarely with the municipalities and their assessors:
In Switz it was noted that basically the problem in many, if not most, of the municipalities was that the assessment rolls were out of hand and hence nothing short of municipal-wide revaluations would bring order out of chaos; that the county board had neither the time nor the funds for so massive an effort; and that accordingly a judgment directing it to perform the basic duties of the assessors would be unwarranted. We expressed our confidence that if the local assessors did their job, the county board would not fail in its assigned role. We have no reason to feel differently about the county board in the present case. [31 N.J. at 432, 157 A.2d 829],
Switz and Ridgefield Park were comparatively early cases in the continuing history of the efforts to secure assessment at full taxable value[3] as prescribed by our Constitution and statutes and to eliminate inequities caused by the failure of municipalities to do so voluntarily. The law is not self-executing and the boards are frequently confronted with such failures and with the lack of resources to accomplish revaluation under their own aegis. In these circumstances a county board has no recourse if it is to execute its mandate but to order a lax *469 municipality to revalue. If the order is disregarded, the board may then seek enforcement by an action in lieu of prerogative writs for revaluation pursuant to its order under judicial compulsion. That was the same remedy afforded to taxpayers in Switz and Ridgefield Park and it is only logical that the boards should also have its benefit as the remedy of last resort.
The courts have sanctioned this procedure, both with respect to the statutory authority of the board to order revaluation and its capacity to enforce the order by mandamus. Essex Cty. Bd. of Tax. v. Newark, 73 N.J. 69, 372 A.2d 607 (1977); Middlesex Cty. Bd. of Tax. v. Boro. of Sayreville, 133 N.J.Super. 41, 335 A.2d 73 (App.Div.1975); Bergen Cty. Bd. of Tax. v. Bogota, 104 N.J.Super. 499, 250 A.2d 440 (Law Div.1969), aff’d 114 N.J.Super. 140, 275 A.2d 158 (App.Div.1971); Essex Cty. Bd. of Tax. v. Belleville, 92 N.J.Super. 338, 223 A.2d 359 (Law Div.1966), aff’d 95 N.J.Super. 327, 231 A.2d 223 (App.Div.1967). Here, the county board, recognizing its inability and that of the Hackensack assessor to remedy the disparate assessment pattern in Hackensack, ordered the municipality to implement a municipal-wide revaluation for the 1987 tax year.
For all of the foregoing reasons defendants’ motion is granted and the complaint is dismissed.

 ln its initial complaint taxpayers sought to restrain the board from certifying the duplicate and the city from sending out tax bills. After discovering that the duplicate had already been certified and that the tax bills had already been mailed taxpayers filed an amended complaint requesting that the duplicate and tax bills be amended.

 Continental Plaza consists of three highrise office buildings. In 1981 one building was sold for $26,000,000. The assessment of $8,000,000 thereon has remained unchanged. The Director found the sale to be unuseable.

 At the time of the Switz and Ridgefield Park decisions, N.J.S.A. 54:4-1 subjected real property to taxation at its true value. ¿.I960, c. 51 amended that statute to provide that real property “shall be valued and assessed at the taxable value prescribed by law,” and at the same time required each county board to establish the "percentage level of taxable value of real property" (N.J.S.A. 54:4-2.26 and 2.27). •