VILLAGE OF RIDGEFIELD PARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, *ET ALS.*, PLAINTIFFS-RESPONDENTS, v. BERGEN COUNTY BOARD OF TAXATION, *ET ALS.*, DEFENDANTS-APPELLANTS.

Argued November 10, 23, 1959—Decided January 25, 1960.

*Mr. James A. Major* argued the cause for defendants-appellants, Fenner and Hutcheon (*Mr. Everett I. Smith,* attorney; *Mr. James A. Major,* of counsel).

*Mr. Theodore I. Botter,* Deputy Attorney General, argued the cause for defendant-appellant, Bergen County Board of Taxation (*Mr. David D. Furman,* Attorney General, attorney).

*Mr. William R. Morrison* argued the cause for plaintiffs-respondents (*Messrs. Morrison, Lloyd & Griggs,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J.   The Village of Ridgefield Park and several of its taxpayers filed a complaint in lieu of prerogative writs against the Bergen County Board of Taxation and the assessors of each of the other municipalities in Bergen County, seeking certain relief with respect to the assessment of real and personal property.   Some of the assessors moved for judgment on the pleadings, and so also did the county board.   Their motions were denied.   The Appellate Division granted leave to appeal from the interlocutory orders, and prior to hearing thereon we certified the matter on motion.

Plaintiffs allege that in the Village of Ridgefield Park all real and personal properties were assessed at true value for the year 1959, but the county board and the defendant

assessors have "wilfully, deliberately and intentionally failed, neglected and refused to perform their duties and obligations" to achieve the same treatment of property in the remaining municipalities of the county. This allegation must of course be accepted as true on a motion addressed to the face of the pleadings. Plaintiffs seek to compel compliance for the year 1959 and thereafter, and also a restraint against collection from the Village of Ridgefield Park of an amount in excess of what its fair share of the cost of county government would be upon the assessment of all real and personal property at true value.

## I.

It is urged that (1) the issuance of a *mandamus* would be contrary to the public interest and (2) plaintiffs should be remitted to an administrative remedy.

Both propositions were presented in *Switz v. Middletown Township,* 23 *N. J.* 580 (1957). There is no point in traversing again the ground fully explored in that case. Succinctly, the situation is this: The *Constitution of* 1947 provides in *Article* VIII, *Section* 1, *paragraph* 1:

"Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value; and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district."

The Constitution does not require that all real property taxed locally or for local use shall be assessed at true value. Rather it requires all such real property to be assessed "according to the same standard of value," which may be a percentage of true value. But the statute, *N. J. S. A.* 54:4-1, provides that unless exempted it shall be subject to taxation "at its true value." The Constitution does not require that all personal property shall be taxed or that personal property,

if taxed, shall be assessed at true value. But, again, the statute just cited provides that all taxable tangible personal property shall be assessed "at its true value." See also *R. S.* 54:3–13 and *N. J. S. A.* 54:3–22; *N. J. S. A.* 54:4–12, 23, 47.

In *Switz* we discussed the long history of widespread failure to comply with the legislative mandate. We had before us and decided the question whether the court could properly look the other way. We agreed we could not. It is the singular situation of the judiciary that issues before it must be met and decided when presented. In this forum, action is inescapable for a court necessarily acts whether it grants or denies relief. Either course affirmatively disposes of the right asserted.

In *Switz* a majority of the court concluded the issuance of *mandamus* to achieve assessment at true value should there be delayed for a period of two years. The manifold problems directly and tangentially involved were weighed, and because of them the right of the plaintiff to relief was suspended for the stated period to the end that the Legislature would have an adequate opportunity to explore the subject. More than two years have elapsed and we assume the necessary facts are on hand for such action by the Legislature as it may find to be in the public interest. In the circumstances, we may not delay the right of plaintiffs to enforcement of the existing statutory policy and thus leave their interests to miscellaneous policies allegedly pursued locally without constitutional or statutory authorization.

As stated above, defendants urge the administrative remedy is adequate and must be exhausted before recourse is had to the judicial forum. There are two aspects: the administrative remedy available (a) to review or revise assessments of taxable property and (b) to review the apportionment made by the county board of the cost of county government for the year 1959.

With respect to the first, it is sufficient to say that the statutory right to equal treatment cannot effectively be

achieved by an appeal to supervisory statutory agencies or by a multitude of petitions to raise the properties of others to full true value. This view was expressed by the Appellate Division in *Switz* upon a full discussion of the subject, 40 *N. J. Super.* 217, 225 (1956), and our decision in that case rests upon that premise. Hence plaintiffs, upon establishing the allegations of their complaint, would be entitled to a judgment directing the several assessors to proceed expeditiously to assess all taxable property in accordance with the statute, that is to say, at true value as the assessor in good faith finds it to be. If it should appear that plaintiff municipality has thus sought in good faith to assess real and personal property at full true value but has failed in some remediable particular to achieve its aim, it may be required to remedy the shortcoming as a condition for relief, contemporaneously with compliance by the defendants with the judgment. The relief ultimately granted cannot, however, relate retroactively to individual assessments as to which the time for appeal by the owners has already expired. They are not parties to this proceeding. Moreover, retroactive reassessments of all property would entail disorder hurtful to the public interest. That relief accordingly should relate to such future assessment date as the trial court shall find to be feasible and fair in the light of the facts. At the argument before us, it was suggested that failure to assess at full true value was admitted in answers to interrogatories. They are not in the record before us. If at any stage of the proceedings it should be conceded that a party has so failed, the court in its discretion may make an *interim* order directing any necessary revaluation process to begin, since the resulting data will ultimately be needed to achieve compliance with the statute.

Defendants correctly challenge plaintiffs' attempt to attack directly in these proceedings the equalization table (*R. S.* 54:3–17 to 19), the apportionment valuation (*N. J. S. A.* 54:4–49), and the table of aggregates (*N. J. S. A.* 54:4–52) made and prepared by the county board for the

purpose of allocating the cost of county government for the year 1959 and to restrain the collection of taxes for that year. The reason is not the adequacy of an administrative review to reach the basic vice of unequal assessments of the underlying individual properties. An administrative review of the county board's work is no more adequate to that end than are the other administrative procedures to which we referred above in reaching the conclusion that a *mandamus* may issue without prior recourse to them. Rather the compelling reason is that government must function and to that end must have funds. It would be quite extraordinary to enjoin in a wholesale fashion the assessment or collection of taxes where the properties are lawfully taxable and the infirmity is claimed to reside in the valuation process. See in general, 51 *Am. Jur., Taxation,* § 1218, *p.* 1039. This essential public policy is reflected in *N. J. S. A.* 54:2–37, which provides that the review of the county equalization table by the Division of Tax Appeals "shall not suspend the apportionment of moneys or collection of taxes." The remedy for the alleged inequity cannot be one which will deny the public the vital services it needs. The question of a subsequent credit either under statute or judicial principle is of course another matter.

## II.

In *Switz* plaintiff sought equal treatment of real property within the municipality in which she was a taxpayer. Defendants here urge that the principle of *Switz* is not applicable to an action by taxpayers of one municipality to compel compliance with the statute in the other municipalities of the county as to either real property or personal property.

With respect to real property, defendants contend the equalization of the aggregates thereof insures equality of treatment as among the municipalities of the county. It is true that practical equality (somewhat short of the ideal;

see *City of Passaic v. Passaic County Board of Taxation,* 18 *N. J.* 371, 381 (1955)) is thereby achieved with respect to the *pro rata* allocation of the county burden among the municipalities as such. And if a municipality assessed its real property uniformly at some percentage of true value, such assessment plus the equalization process would achieve substantial equality among all of the individual taxpayers of that municipality with respect to the burden of county government. But unless all municipalities thus deal equally with all real property within their borders, there is discriminatory treatment as among the individual taxpayers of the county with respect to the burden of county government which the equalization process does not correct. This was recognized in *Switz.*

In *Switz,* Mr. Justice Heher said (23 *N. J.,* at *page 599*):

"* * * And we allude again to the element of inequality attending the fulfillment of the judicial mandate in but one municipality of the county, and the obvious need of joint action under the one standard by all such municipalities when the time arrives, requiring that they be made parties to the action, if need be to secure the requisite uniformity."

The concurring opinion stated (23 *N. J.,* at *pages 609–610*):

"It seems clear to me that all of the taxpayers of a county are entitled to equal treatment with respect to the distribution of the cost of county government. Distribution among municipalities on the basis of equalization of aggregates of their respective ratables accomplishes a proper allocation of that cost *as among the municipalities,* and if equalization of the assessments within the Township of Middletown were achieved, each taxpayer of the township would bear his proper share of the cost of county government *as against other taxpayers of the township.* But, so far as the tax for county purposes is concerned, each taxpayer is entitled to equality, not merely as against other taxpayers within his own municipality, but also as against all other taxpayers of the county. It is no answer to say that the taxpayer is paying no more than his just share. He is entitled to enforcement of the legislative scheme that all taxable property be taxed equally for the purposes of county government. Just as plaintiff's right to such enforcement of the public duty within her township should be recognized whether she is bearing more or less than the share of the cost of local government which would

be hers if the statute were complied with, so also there must be recognized the right of the owner of any property taxed for county purposes to seek enforcement of the statutory scheme for equality as among all amenable to taxation for county purposes. *Driscoll v. Burlington-Bristol Bridge Co.*, 8 *N. J.* 433, 476 (1952) ; *Garrou v. Teaneck Tryon Co.*, 11 *N. J.* 294, 302 (1953) ; *Koch v. Borough of Seaside Heights*, 40 *N. J. Super.* 86, 93 (*App. Div.* 1956), affirmed 22 *N. J.* 218 (1956) ; *Haines v. Burlington County Bridge Commission*, 1 *N. J. Super.* 163, 171 (*App. Div.* 1949).

If the county tax were separately levied by the county itself, the right of each taxpayer to seek enforcement of the statutory scheme throughout the county would be apparent. If the county tax were thus directly distributed by county assessments ranging, let us say, from *3.08% to 80%*, a taxpayer *would not be denied the right to enforce the public duty merely because he happened to be paying the same number of tax dollars he would pay if uniformity had been achieved.* If I am correct in this premise, then the right of a taxpayer of Middletown to relief as to the entire county with respect to the tax for county purposes should not be obscured and denied by the circumstance that the county tax is levied *via* municipalities and local assessors rather than directly by the county itself."

It may be added that *N. J. S. A.* 54:3–21 recognizes that a taxpayer's interest is not solely intramunicipal, for it authorizes him to appeal if he feels "that he is discriminated against by the assessed valuation of other property in the county."

■ The views expressed above apply with equal force to personal property. In *Switz,* Mr. Justice Heher said (23 *N. J.,* at *page* 599) :

"And the local authorities are admonished that the current assessment statutes, *ante*, place real and personal property in the one category, to be assessed at 'true value.' The assessment of real property at full value and tangible personal property at less would violate the statutory rule of equality. \* \* \*"

The concurring opinion said in the same vein (23 *N. J.,* at *page* 611) :

"The statute calls for like treatment of both real and personal property. It is of no moment that the Legislature may constitutionally differentiate between the two. The Legislature has not, and the provision for true value as to which enforcement is sought

appears only in the statute. In short, if *mandamus* is granted to compel assessment at true value, it will be the statute, not the Constitution, which is being enforced."

There is still another consideration peculiarly applicable to personalty which is itself sufficient to require the same conclusion. As we have this day decided, *City of Passaic v. Passaic County Board of Taxation,* 31 *N. J.* 413, in allocating the cost of county government the county board is required to accept the aggregates of personal property without equalization thereof. The taxpayers of a municipality which understates the total value of its taxable personal property thus profits at the expense of the taxpayers of other municipalities. The sole feasible remedy for that inequality is to compel the local assessors to obey the legislative will and to utilize the legislatively prescribed techniques to ascertain the amount and value of such property. *R. S.* 54:4–12 *et seq.*

It is urged that assessment of personal property at true value would be unpalatable. Perhaps so; indeed, probably so. But the remedy lies with the legislative branch. The judiciary has no power to devise tax programs or to qualify the existing legislative mandate with a judge's private view of what is just or sensible.

One further question should be considered. Could the court, because of collateral public problems which are unrelated to unequal treatment of taxpayers but which will arise upon assessment at full true value, refrain from acting in a suit of this kind if the municipalities each accomplished intramunicipal equality at a percentage of true value? The answer, it seems to us, is that the statutory equality among taxpayers with respect to county taxes (and school taxes where the burden is shared by municipalities) can be achieved only at full true value. If each municipality assessed all of its real and personal property at a single percentage of true value selected by it, there could be substantial equalization of the aggregates of real property at true value, but there is no statutory authority or available technique for such equalization of the aggregates of personal property. If

the aggregates of real property are equalized while the aggregates of personal property are not, then clearly the apportionment of the county tax (and school tax) would be discriminatory as among the total taxpayers of the several municipalities and also as between the owners of real property and personal property within each municipality. And if all municipalities assessed personal property at full true value while each applied a percentage of true value to real property, then although, upon equalization of aggregates of real property, equality would substantially result with respect to the *county* tax (and school tax), yet real and personal property, being assessed upon an unequal basis for municipal purposes, would not share equally the cost of *municipal* government. Hence, we see no escape from the proposition that the existing legislative policy can be satisfied only by assessment of all taxable property at full true value.

### III.

The county board urges it is entitled to judgment as a matter of law. In *Switz* it was noted that basically the problem in many, if not most, of the municipalities was that the assessment rolls were out of hand and hence nothing short of municipal-wide revaluations would bring order out of chaos; that the county board had neither the time nor the funds for so massive an effort; and that accordingly a judgment directing it to perform the basic duties of the assessors would be unwarranted. We expressed our confidence that if the local assessors did their job, the county board would not fail in its assigned role. We have no reason to feel differently about the county board in the present case. However, the motion was based upon the pleadings, and plaintiffs cannot be denied the opportunity to prove the factual allegation quoted in the second paragraph of this opinion. Hence the motion was properly denied. But we repeat that the board cannot be expected to assume the primary role of the assessors and hence a judgment should

not run against it unless it appears that the board has either impeded the assessors or has evidenced an intent not to discharge its function within the limits of its authority and facilities. And of course insofar as the complaint seeks to compel the county board to undo its work for the year 1959, we agree for the reasons given above that such relief may not be granted. The time for final action by the board and review thereof has long since passed. *N. J. S. A.* 54:4–55.

The orders are accordingly affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, FRANCIS, PROCTOR, HALL and SCHETTINO—6.