CITY OF PASSAIC, A MUNICIPAL CORPORATION, PETI-
TIONER-APPELLANT, v. PASSAIC COUNTY BOARD OF
TAXATION AND DIVISION OF TAX APPEALS, DEPART-
MENT OF THE TREASURY, RESPONDENTS-RESPOND-
ENTS.

Argued November 23, 1959—Decided January 25, 1960.

414

*Mr. William N. Gurtman* argued the cause for appellant.

*Mr. Theodore I. Botter,* Deputy Attorney General, argued the cause for respondents, Passaic County Board of Taxation and Division of Tax Appeals, Department of the Treasury (*Mr. David D. Furman,* Attorney General, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J.   The City of Passaic attacks the apportionment of the cost of county government among the municipalities for the year 1956.   It urges the statute does not authorize the inclusion of the assessed value of personal property in the apportionment basis.   It adds that if this view be rejected the statute is unconstitutional.   The county board found against the city and the Division of Tax Appeals affirmed.   On our motion we certified the city's further appeal to the Appellate Division before it was considered there.

The city complains that whereas the aggregates of real property as returned by the local assessors are equalized at full true value by the county board under *R. S.* 54:3–17 to 19, no such process is provided with respect to personal property.   Thus the municipality which is more diligent than others in reaching taxable personalty or uses a higher percentage of true value is penalized in its share of the cost of county government.   For this reason, it urges the aggregate assessments of personal property should be disregarded.   However, it seems equally clear that upon the city's approach the advantage would run to the taxpayers of municipalities with the greater amount of personal property.

If the Legislature intended both real and personal property to be taxed for county purposes, it would be odd to disregard entirely the valuations of personalty and to require personalty to pay on the substantially unrelated basis of the valuation of real property in the municipality.   The uniform practice has been to tax both classes of property for county purposes, and if the statute so requires, it is strong evidence against the city's position.   That the statute

does subject personal as well as real property to county taxation is inescapable from a mere reading of chapter 4 of Title 54 (*R. S.* 54:4–1 *et seq.*). See also *R. S.* 54:3–13. Indeed the city does not suggest otherwise.

The provisions dealing with apportionment of the county tax quite plainly require personal property to be included in the basis of apportionment. The assessor files with the county board his list and a duplicate thereof containing the assessment of all taxable real and personal property. *N. J. S. A.* 54:4–12. The county board may make certain revisions, *N. J. S. A.* 54:4–47, and thereupon, it is provided in *N. J. S. A.* 54:4–48:

"The county board of taxation shall enter all changes or additions on the various tax lists and duplicates, and, upon ascertaining the total amount of tax to be raised, fix and adjust the amount of state school, state and *county* tax to be levied in each taxing district in the county *in proportion to the respective values thereof* [*i. e.* the values of real and personal property on the lists], and the amount to be levied in each taxing district for local purposes as certified to it. \* \* \*" (Emphasis added.)

*N. J. S. A.* 54:4–49, as it read for the tax year here in question, provided specifically that "in apportioning the amount of money to be raised in the various taxing districts for state, state school or *county* purposes," the county board, after "having revised, corrected and equalized the assessed value of *all* the property in the respective taxing districts," shall make certain deductions, and thereupon "the *total* valuations" as ascertained after such revisions of the assessment lists and deductions therefrom "shall form the basis for the apportionment of State, State school or *county* taxes." *L.* 1956, *c.* 93, § 2. (Emphasis added.) The provisions of *N. J. S. A.* 54:4–52 relating to the table of aggregates to be prepared by the county board follow and implement the same thesis.

Hence there is no doubt that the aggregates of personalty were required to be included in the apportionment valuation for the year 1956.

██ *N. J. S. A.* 54:4–49, the apportionment section, was amended subsequent to the county board's work for the year 1956. *L.* 1957, *c.* 8, § 1. Although the amendment is not involved in this case, we think it desirable to set at rest any question as to whether the amendment operated to exclude personal property from the apportionment valuation. The statement accompanying the bill which became *Chapter* 8 discloses no such purpose. Rather the stated object was to provide that overpayments and underpayments by a taxing district with respect to county costs and other common burdens shall be adjusted on the basis of the actual dollar amount rather than by adjustment of the aggregate ratables, the statement pointing out that the latter method may result in a district receiving substantially more or less than the dollar amount it overpaid or underpaid.

The amendment reads as follows with respect to the "apportionment valuation":

"(a) Except as to any State tax at a fixed rate provided for in sections 54:4–50 and 54:4–51 of this Title, each county board of taxation, after having received the tax lists and duplicates of the assessors and having revised and corrected the same *and having equalized the aggregate valuations of all the real property in the respective taxing districts, as required by sections* 54:3–17 *to* 54:3–19 *of the Revised Statutes*, shall, after making adjustments for the debits and credits hereinafter mentioned, apportion the amount to be raised in the respective taxing districts for State, State school, county and free county library purposes and for purposes of regional and consolidated school districts and school districts comprising 2 or more taxing districts, *on the basis of the total valuation so ascertained for each taxing district*. The total valuation of each taxing district, so ascertained, shall be known as the 'apportionment valuation.'" (Emphasis added.)

The pertinent phrases are the two we have italicized. The first replaced the phrase "equalized the assessed value of all the property" in the earlier provision. The reason is clear enough. *R. S.* 54:3–17 requires the county board to ascertain the general ratio or percentage of full value at which the real property of each taxing district is assessed on the

lists submitted to it and to prepare an equalization table wherein the full true value of the real property in all of the districts will appear. *R. S.* 54:3–19 provides the valuations of real property as thus equalized "shall be deemed to be the true valuation of such property in computing the total ratables of each district for all apportionments of county and state taxes, charges or distribution of moneys." Hence the first italicized phrase in the 1957 amendment is a mere cross-reference to *R. S.* 54:3–19 and does not bespeak a purpose to limit "total valuation" in the second italicized phrase to the equalized aggregates of real property.

Although there is no ambiguity or doubt inviting recourse to practical construction, *Lane v. Holderman*, 23 *N. J.* 304, 318 (1957), it may be noted that the city concedes the county boards have uniformly construed the statute as we have. See *City of Passaic v. Kingsley*, 47 *N. J. Super.* 265 (*App. Div.* 1957), certif. denied 26 *N. J.* 170 (1958). This construction was at least assumed to be correct in *City of Passaic v. Passaic County Board of Taxation*, 18 *N. J.* 371, 380 (1955). See also *Borough of Totowa v. Passaic County Board of Taxation*, 5 *N. J.* 454 (1950). Additionally, it is pertinent to add that in directing the preparation of the equalization table for use in the distribution of state aid to schools, a subject kindred to the matter of taxation, *City of Passaic v. Passaic County Board of Taxation, supra* (18 *N. J.*, at *page* 385), the Legislature directed the inclusion of both real and personal property, requiring real property to be equalized at true value and personal property to be taken as assessed. *L.* 1954, *c.* 86; *N. J. S. A.* 54:1–35.1 *et seq.*

▆ 4] Under existing circumstances, there is nothing arbitrary or invidious in providing for equalization of the aggregates of real property while omitting similar treatment of the aggregates of personal property. The failure of assessors to achieve the legislative goal of assessment at true value has long been notorious. With respect to real property, an equalization technique is feasible since the *quantum* of real

property is readily ascertainable and sales and appraisal data are procurable. Basic information thus existing for an acceptable finding of the average ratio or percentage of true value at which real property is assessed locally, a device could be fashioned to compensate for the assessor's failure and thereby to support the legislative policy of equality. *Borough of Carteret v. Division of Tax Appeals,* 40 *N. J. Super.* 439, 465 (*App. Div.* 1956), certif. denied *Borough of Sayreville v. Division of Tax Appeals,* 22 *N. J.* 224 (1956). On the other hand, comparable information is not readily available to the county board with respect to personalty. The Legislature accordingly limited the equalization process to the area of its usefulness. The problem of equalization of personal property has not gone unnoticed. *Ninth Report of the Commission on Tax Policy, p.* 111 (1958). The provision for equalization of only the aggregates of real property does not bespeak legislative approval of the assessor's failure to obey its mandate that personal property be assessed at true value. Rather, it is fair to assume, the Legislature has not found an effective antidote within the framework of the existing tax structure.

What we have just said disposes of any conceivable constitutional objection. The Legislature need not refrain from achieving a measure of equality where it can merely because its technique is not serviceable throughout the apportionment basis. Absolute equality in taxation is a practical impossibility. *Borough of Totowa v. Passaic County Board of Taxation, supra* (5 *N. J.,* at *page* 464). As we have said, the inequality of which the city complains is not the product of the statute. Rather it is the product of the failure of assessors to comply with the legislative mandate. If it be assumed the resulting inequality in operation presents a constitutional problem, it is sufficient to say the appropriate remedy is one addressed to the underlying failure, and that remedy is available, as we have this day held, *Village of Ridgefield Park v. Bergen County Board of Taxa-*

*tion,* 31 *N. J.* 420, in the form of an action to compel the local assessors to discharge their duties.

The judgment is accordingly affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.