MENYUK, J.T.C.
This matter comes before the court on plaintiffs’ motion for an order of summary judgment directing the defendant municipality *482 to undertake a revaluation and on the cross-motion of defendants Monroe Township and the Mayor, Council and Tax Assessor of Monroe (collectively, “Monroe Township”) for an order of summary judgment dismissing the complaint as to those defendants. Defendant Director, Division of Taxation (“Director”), has filed a brief joining in plaintiffs’ request that a revaluation be ordered. Defendant Middlesex County Board of Taxation (“Board”) has filed a letter stating that it takes no position on the motion. For the following reasons, plaintiffs’ motion is granted and Monroe Township’s motion is denied.
The complaint was originally filed in the Law Division of the Superior Court, Middlesex County, as an action in lieu of prerogative writ, and was transferred to the Tax Court pursuant to N.J.S.A. 2B:13-2(b). See also R. 4:3-4(a) (transfer of action from Superior Court to Tax Court). Each of the plaintiffs owns a single family residential property in Monroe Township. Two of the plaintiffs own homes in a development known as Regency at Monroe (the “Regency Development”), and two own homes in a development known as Renaissance at Monroe (the “Renaissance Development”). According to the complaint, the plaintiffs are members of the steering committee of an unincorporated group of approximately 1,000 Monroe Township homeowners living primarily in the Regency Development and the Renaissance Development who are dissatisfied with the administration, equalization, and amount of their own and other local property tax assessments in Monroe Township. Monroe Township maintains that the complaint must be dismissed because the plaintiffs failed to pursue administrative remedies available to them from the Board.
The facts are essentially undisputed. For the most part, plaintiffs’ case relies upon statistical data derived from an annual study of real property sales[1] conducted by the Division of Taxation for *483 the purpose of determining the average ratio of aggregate assessed to aggregate true value for each taxing district. The average ratio is the basis of the Chapter 123[2] statutory remedy for discrimination in assessment within a taxing district. See N.J.S.A. 54:l-35a (defining average ratio and common level range); N.J.S.A. 54:3-22(c) through (f) (remedy applicable to appeals before the Board) and N.J.S.A. 54:51A-6 (remedy applicable to appeals before the Tax Court).
The Director has promulgated a regulation, N.J.A.C. 18:12A-1.14(b), which sets out twelve criteria that indicate when a revaluation may be required. Several of those twelve criteria refer to statistics generated by the Division from its sales ratio study. As summarized in Totowa Borough v. Passaic County Bd. of Taxation, 23 N.J.Tax 466, 470-71 (Tax 2007), the Director’s criteria for evaluating the need for a revaluation are:
1. The general coefficient of deviation, defined in the regulation as “an average deviation from the average assessment sales ratio expressed as a percentage of average assessment ratio for each taxing district, for all properties included in ‘usable sales ... As to this criterion, the regulation states: “A coefficient of deviation greater than 15 percent generally indicates a need for revaluation. If it is 15 percent or less, then other factors must also be used to justify a need for revaluation”;
2. The stratified coefficient of deviation, defined in the regulation as “an average deviation of assessment sales ratios for all usable sales of each property class from the average assessment ratio for the class.” The regulation provides that, if the stratified coefficient is greater than 15 percent, this may indicate a need for revaluation;
3. The segmented coefficient of deviation, defined in the regulation as “an average deviation of assessment sales ratios for all ‘usable sales’ of each property class from the average assessment ratio for all properties of all classes expressed as a percentage average assessment ratio for all properties of all classes.” The regulation provides that, if this ratio exceeds 15 percent, this may indicate a need for revaluation;
4. The size of the sales sampling used in calculating the coefficient of deviation;
5. The ratio promulgated by the Director of the Division of Taxation pursuant to N.J.S.A. 54:1-35.1. As to this criterion, the regulation states that: “A Director’s Eatio of 85 percent or lower generally denotes noncompliance where, as is the *484 norm, the adopted percentage level of assessment established by the county board of taxation is 100 percent”;
6. Individual “assessment-sales” ratios;
7. Weighted ratios for property classes;
8. District weighted ratios;
9. Neighborhood and zoning changes;
10. A lack of adequate records maintained by the assessor;
11. The last year of revaluation or reassessments. As to this criterion, the regulation states that: “If a revaluation or reassessment has not taken place in a municipality for 10 years or more, this can be a factor in ordering a revaluation”; and
12. The amount of revenue lost due to tax appeals.
[Id. at 470-71],
The last municipal revaluation of real property in Monroe Township for purposes of local property taxation was effective for tax year 1993, seventeen years ago. The district weighted ratios for the period 2004 to 2007[3] were substantially below the 100% level established by the Board, and Monroe Township’s average ratio of assessed to trae value, as defined by N.J.S.A. 54:l-35a(a), has steadily decreased. The ratio for 2000 was 85.51%; it fell below 85% the following year (83.47%), and for 2009, was 44.88%.
Moreover, the evidence indicates that, for at least some of those years, the average ratio should have been less than the ratio computed by the Division because numerous transactions that should have been included for purposes of calculating the ratio were improperly discarded. Without exception, those transactions would have lowered the ratio during the period July 2, 2001 through November 1, 2005.
As explained in Fort Lee Borough v. Director, Div. of Taxation, 12 N.J.Tax 299, 302 (Tax 1992), aff'd, 13 N.J.Tax 323 (App.Div. 1993), the Director has deemed certain categories of transactions to be unreliable for purposes of the sales ratio study because they do not reflect true market value. These transactions are generally called “non-usable” or “NU.” During the time period July 2, *485 2001 through November 1, 2005, twenty-seven such categories were listed in N.J.A.C. 18:12-l.l(a).[4] The category numbered “26” is a miscellaneous category for non-usable transactions, defined as “[s]ales which for some reason other than specified in the enumerated categories are not deemed to be a transaction between a willing buyer, not compelled to buy, and a willing seller, not compelled to sell.”
In 2001, a clerk in the Monroe Township assessor’s office who was assigned the task of categorizing sales of property for purposes of the Division’s sales ratio study was misinformed or misunderstood exactly which sales to categorize as NU 26 transactions. She consistently designated sales transactions yielding an assessment to sales ratio which was, in her words, “extremely below” the then-current average ratio for Monroe Township as NU 26 transactions, She noted these transactions with phrases such as “distorted sales to assessment ratio” or “not within assessing practices.” In 2005, for example, when the average ratio in Monroe Township was 61.83, transactions with assessment sales ratios ranging from 21.61 to 33.75 were categorized as NU 26 because of distorted assessment sales ratios by the Monroe Township assessor’s office. Sales transactions reflecting an assessment sales ratio much higher than the then-current average ratio, although much fewer in number, were not categorized in this manner. Apart from their low assessment sales ratios, the sales transactions coded as NU 26 with the notation indicating “distorted sales to assessment ratio” had no other indicia that they were anything other than fair market sales.
The clerk’s deposition testimony indicated that she had discussed these sales with the deputy assessor and possibly the assessor, who did not indicate to her that she was improperly categorizing these sales and did not otherwise correct her work. It was not until late in 2005 that the Monroe Township assessor’s office was instructed (by either the Board or the Division) to cease noting sales with low assessment to sales price ratios as NU 26 *486 transactions solely because they had low ratios. Consistently excluding from the sales ratio study those sales transactions with assessment to sales ratios less than the average ratio would have had the effect of raising the overall average ratio for the next tax year. It would also have had the effect of reducing the coefficients of deviation computed by the Division because transactions with an assessment sales ratio at a significant variance from the average ratio are systematically eliminated from the calculation.
The Division reviews the sales transactions reported by the various assessors’ offices, including the usable and non-usable classifications placed on those transactions, before the Division computes the average ratios and other statistics. Some, but not all, of the transactions incorrectly categorized by the Monroe Township assessor’s office were re-categorized by the Division as usable for purposes of the sales ratio study. From data supplied by the Division, plaintiff estimates that less than half of those transactions were reversed. Monroe Township does not dispute that estimate. During certain periods, such as between May 2003 and February 2004, it appears that the Division reversed virtually none of the transactions categorized as NU 26 by virtue of distorted assessment-to-sales ratios and similar reasons.
Moreover, while the Monroe Township assessor’s office ceased excluding these transactions at the end of 2005, the effect of the mistake lingered because the Director’s methodology for computing the average ratio averages the current year’s aggregate true value of real property in Monroe Township with the prior year’s average true value. Fort Lee Bor., supra, 12 N.J.Tax at 303 (quoting Kearny Town v. Director, Div. of Taxation, 11 N.J.Tax 497, 499 (Tax 1991), aff'd, 13 N.J.Tax 119 (App.Div.1992)). “Because of the averaging procedures used, all prior year’s ratios play a role in the current ratio, but the influence on the final result of each prior year decreases as it becomes more remote.” Fort Lee Bar., supra, 12 N.J.Tax at 304.
In addition to the steadily decreasing average ratio in Monroe Township, the coefficients of deviation indicate the need for reassessment under the standards promulgated by the Division of *487 Taxation. See N.J.A.C. 18:12A-1.14(b)(l)(i), (ii) and (iii) (general, stratified and segmented coefficients of deviation exceeding fifteen percent may indicate a need for revaluation). Monroe Township’s general coefficient of deviation has steadily increased, from 14.61 in 2005 to 21.31 in 2009.[5] There were relatively few sales of Class 1 property (defined by N.J.A.C. 18:12-2.2(a) as vacant land), and Class 4 property (defined by N.J.A.C. 18:12-2.2(e), (f), and (g), as commercial, industrial and apartment properties, respectively) during the period 2005 to 2009, so that stratified coefficients of deviation for those classes of property as well as the segmented coefficients of deviation may not be reliable indicators of the need for revaluation. The stratified coefficient for Class 2 property (defined by N.J.A.C. 18:12-2.2(b) as residential property housing no more than four families) ranged from 14.11 in 2006 with steady progression upward to 20.84 in 2009. This indicates a lack of uniformity of assessment within that class. N.J.A.C. 18:12A-1.14(b) (1 )(ii).
Although the court is unable to rely upon the stratified and segmented coefficients of deviation as reliable indicators of lack of uniformity of assessment among the classes, the assessor’s deposition testimony plainly indicates that the methodology he employs for assessing Class 4 properties is different than the methodology he employs for Class 2 properties. In valuing new Class 4 properties for purposes of assessment, he determines its current market value and multiplies that value by the current average ratio. When he values new Class 2 construction, he uses computer assisted mass appraisal (“CAMA”) software, which was developed in connection with the 1993 revaluation. He enters into his computer physical data for the new construction, such as square footage, type of heating system, whether the house has a basement, and so forth, and the CAMA software computes the value. In other words, new residential construction is valued by using the *488 same computer program that the revaluation firm used to value residential property during the 1993 revaluation. The assessor cited one instance when he was aware that the CAMA software was valuing homes in a new development at an amount he believed to be too high and, in that case, he changed one of the fields in the software to produce lower assessments. However, the methodology employed by the assessor generally does not take into account any differences that might exist in the market for sales of homes in neighborhoods that were in existence prior to the 1993 revaluation as compared with the market for newer neighborhoods in newer developments.
The statistics compiled by the Division indicate that Monroe Township’s range of individual assessment-sales ratios have been widely divergent and outside the common level range as least as often as they have been within it. See N.J.AC. 18:12A-1.14(b)(l)(vi). For example, during the period July 1, 2006 through June 30, 2007, 434 sales of Class 2 property which, according to the Division, constituted 82% of the line items on Monroe Township’s assessment list and 80.25% of Monroe Township’s ratables in 2007, had individual sales ratios ranging from 22.70 to 76.89. Only 50% of those sales fell within the common level range. Of the remainder, 23% were below the common level range and 27% were above the common level range. More recent statistics reported by the Division do not indicate an improvement: during the period July 1, 2008 through June 30, 2009,[6] 306 sales of Class 2 property had individual sales l’atios ranging from 21.02 to 100.85. Of those sales, 32% were within the common level range, 11% were below the common level range, and 57% were above the common level range.
The remaining indicia of a need for revaluation set forth in the Division’s regulation are also present. There were numerous *489 zoning changes between 1994 and 2006, including one designating a planned residential development affordable housing district and several designating planned retirement community zones. Several residential developments have been built since the last revaluation, including several restricted age developments. It is undisputed that three warehouse buildings, each in excess of an estimated size of 1,000,000 square feet, have been constructed in Monroe Township since the last revaluation in 1993. See N.J.A.C. 18:12A-1.14(b)(l)(ix) (neighborhood and zoning changes that may affect value in all or a part of a taxing district is a factor to be considered when considering the need for revaluation). It is also undisputed that Monroe Township has no property record cards for those properties constructed between 1993 and 1996. See N.J.A.C. 18:12A-1.14(b)(l)(x) (lack of adequate records, such as property record cards, is indicative of the need for a revaluation).
The last factor to consider in determining whether a revaluation is needed is the amount of revenue lost due to appeals. N.J.A.C. 18:12A-1.14(b)(l)(xii). Plaintiffs counsel has estimated that Monroe Township lost revenue in excess of $2,100,000 per year (based on 2008 tax rates) as a result of tax appeals filed for tax year 2007 for homes in the Encore, Regency, Renaissance at Cranbury Crossing and Renaissance at Monroe developments.
According to plaintiffs’ counsel, 52 of the assessments in those developments were reduced due to 2007 tax appeals filed by his law firm. The assessor confirmed in his deposition testimony that, as a consequence of the 2007 appeals, he concluded that the assessments in those four developments were too high and he adjusted them to amounts consistent with the judgments issued in the appeals. Plaintiffs’ attorney obtained from public records the 2007 and 2008 assessments of the properties in the four developments where assessments had been lowered, and calculated the loss in revenue resulting from the reductions, based on 2008 tax rates.
The assessor did not file a compliance plan in making the adjustments to the 2008 assessments of the properties in those four developments. See N.J.S.A. 54:4-23, which, prior to its *490 amendment by L. 2009, c. 251, § 2, required the assessor to submit a compliance plan to the county board of taxation and the Director for approval when the assessor proposed to reassess all or a portion of the taxing district due to lack of uniformity. The statute currently requires only the approval of the county board of taxation and no longer deems a plan approved if the county board of taxation fails to act within forty-five days. See also N.J.A.C. 18:12A-1.14(i)(3), which has not been amended since the amendment of the statute, but which sets out the criteria to be considered when determining to approve a compliance plan.
In April 2006, plaintiffs’ counsel wrote to the Board, stating that he represented several hundred homeowners in Monroe Township and requesting a meeting for the purpose of discussing a municipal-wide revaluation, citing in particular the inappropriate exclusion of hundreds of sales on the ground that they had distorted assessment ratios. He noted that only sales that would have the effect of reducing the average ratio were excluded. There was apparently some telephonic communication between plaintiffs’ counsel and the Middlesex County tax administrator, and a subsequent letter from plaintiffs’ counsel to the administrator threatening to file an action seeking a revaluation if the Board failed to act. The tax administrator responded by letter dated August 25, 2006, stating that the Board saw no need for a meeting because the recently concluded 2006 appeals did not establish proof overcoming the “presumption of regularity.”
As noted above, there is no real dispute over any of the foregoing facts. The Board neither admitted nor denied any of the facts set forth in the plaintiffs’ statement of material facts filed pursuant to R. 4:46-2(a), and the Director either admits those facts or states that it has no basis to deny them. Monroe Township either admits or does not dispute the facts relied upon by plaintiff. With respect to the statistics published by the Director, Monroe Township admits that the Director published them but “cannot attest to the accuracy of the information from which such statistics were derived.” The data used by the Division, however, was available to Monroe Township for its own review. Much of the data was already in Monroe Township’s possession, as *491 indicated in its answers to plaintiffs’ interrogatories, and it was certainly available through discovery. Moreover, the sales relied upon by the Division in computing the various ratios and coefficients of deviation were taken from records maintained by the Monroe assessor’s office, namely, the SR-1A forms reporting sales and classifying them as usable or non-usable. See New Jersey Division of Taxation, Handbook for New Jersey Assessors at X-3 to X-10 (1989). Similarly, Monroe Township refuses to concede that plaintiffs’ counsel’s estimate of lost revenues due to tax appeals is correct, but it does not offer any estimate of its own. As set forth in its answers to interrogatories, Monroe Township does not maintain ongoing records related to the amount of tax revenues lost due to successful tax appeals.
The cross-motions of plaintiffs and Monroe Township are made pursuant to R. 4:46, which provides that summary judgment should be granted when “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). “By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a ‘genuine issue as to any material fact challenged.’ ” Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 529, 666 A.2d 146 (1995). If an opposing party offers no affidavits or matter in opposition, that party cannot be heard to complain if the court grants summary judgment. Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 75, 110 A.2d 24 (1954). The court must consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. Brill, supra, 142 N.J. at 540, 666 A.2d 146. I conclude that there is no genuine issue of material fact in dispute and that disposition of this action by way of summary judgment is appropriate.
*492 At the outset, it will be helpful to set out the constitutional requirement of uniformity in local property taxation, the statutory framework that implements that requirement, and the administrative procedures that have been adopted to effectuate the statutory plan in order to understand the facts that are material to the decision in this matter. The Uniformity Clause of the New Jersey Constitution mandates that all property must be assessed under general laws and by uniform rules and that all real property assessed locally by a taxing district[7] must be assessed according to the same standard of value. N.J. Const. art. 8, § 1, ¶1(a). The design of the statutory plan enacted by the Legislature to give effect to this constitutional requirement requires a local taxing district to tax annually all real property in the distinct, N.J.S.A. 54:4-1, excluding real property that has been exempted by the Legislature to the extent permitted by the Constitution, see N.J. Const. art. 8, § 1, ¶ 2, and excluding real property that is taxed by the State. See, e.g. N.J.S.A 54:29A-7 (certain railroad property).
The municipal assessor must annually assess all property in the taxing district as of October 1 each year. N.J.S.A. 54:4-28. He or she is directed “to determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract” as of October 1 of the pre-tax year. N.J.S.A 54:4-23. The assessor enters on the annual tax list the names of the owners, a description of the parcel, and the “taxable value” of each parcel as that value has been determined by the assessor, N.J.S.A. 54:4-24, using the forms and methods prescribed by the Director. N.J.S.A 54:4-26. “Taxable value” is the percentage of true value established by each county board of taxation. N.J.S.A 54:4-2.25, -2.27. The term “true value” is not defined, but is understood to be equivalent to the term “full and fair value” as used in N.J.S.A 54:4-23, and is sometimes referred to as “market value.” Colton Homes, Inc. v. Township of West Windsor, 15 *493 N.J.Tax 231, 242 (Tax 1995). See also N.J.S.A 54:1-35.3 (“true value” for purposes of computing the Director’s ratio of assessed value to true value is deemed to be valuation at current market prices). All of the county boards of taxation have established the taxable value as 100% of true or market value.
Each assessor must complete his or her annual assessment list of taxable valuations and file it with the county board of taxation by January 10 of the tax year. N.J.S.A. 54:4-35. The county board of taxation is charged with the statutory duty of securing the taxation of all property in the county at its taxable value. N.J.S.A 54:3-13. This is in furtherance of both the constitutional command that all real property in a taxing district be assessed according to the same standard of value, N.J. Const. art. 8, § 1, ¶ 1(a), and also in furtherance of the county board’s statutory duty to promulgate an equalization table, N.J.S.A. 54:3-18, the purpose of which is to allocate the costs of county government equally and proportionally among the taxing districts of a county. Willingboro Township v. Burlington County Bd. of Taxation, 62 N.J. 203, 207, 300 A.2d 129 (1973).
The courts of this state have long cited the need for periodic revaluation of all of the real property in a municipality in order to maintain assessments at true value. See, e.g., Switz v. Township of Middletown, 23 N.J. 580, 130 A.2d 15 (1957), where the Court noted “[t]he general disregard of the full true value standard,” id. at 594, 130 A.2d 15, and acknowledged that several municipalities had undertaken programs of complete revaluation in an effort to eliminate inequalities in the burden of taxation. Id. at 597-98, 130 A.2d 15. “The purpose and function of a revaluation is to ‘achieve tax equality not only as to any given taxing district but also between municipalities of the same county.’ ” Borough of Totowa v. Passaic County Bd. of Taxation, 23 N.J.Tax 466, 469 (Tax 2007), quoting Middlesex County Bd. of Taxation v. Borough of Sayreville, 133 N.J.Super. 41, 44, 335 A.2d 73 (App.Div.1975).
In In re Appeal of Kents, 34 N.J. 21, 166 A.2d 763 (1961), property owners sought reductions in their assessments where the assessments were admittedly at less than true value but were *494 alleged to be above the “common level” of assessment in the municipality. The Court concluded from the evidence before it that there was no common level of assessment in the defendant municipality, that there was clearly inequality of assessment, and that a taxpayer should have a practical, individual remedy when his or her property was being taxed unfairly as compared with other property owners in the municipality. Id. at 30-31, 166 A.2d 763. The Court noted: “[E]xperienee indicates that except where a municipality has made a complete revaluation, parcel by parcel, and has implemented that work-product, a common level, in the sense of a single ratio to true value at which the great bulk of the ratables is assessed, cannot readily be shown if indeed one exists.” Id. at 26, 166 A.2d 763. The Court declined to impose a specific formula for remedying discrimination in assessment, id. at 30, 166 A.2d 763, but concluded that, where there is no common level of assessment, and no effort has been made to achieve a common level, the Director’s average ratio “should be deemed sufficient evidence of the level to which reduction should be granted.” Id. at 31, 166 A.2d 763.
In Piscataway Assocs., Inc. v. Township of Piscataway, 73 N.J. 546, 376 A.2d 527 (1977), the Court explained that, when an assessor cames over assessments following a revaluation, it assumes that the percentage increase in value of each property remains the same. While the Court accepted the efficacy of a revaluation for the years immediately following the revaluation, it allowed Kents-type relief where a revaluation had occurred nine years previously, noting that the “the vitality of th[e] assumption [that the percentage increase in value of each property remains the same] dissipates with the passage of time.” Id. at 552, 376 A.2d 527.
Several years after Kents was decided, the Legislature responded to the issue of discrimination in local property tax assessment by enacting what has come to be known as Chapter 123, L. 1973, c. 123. As explained in Mumick v. City of Asbury Park, 95 N.J. 452, 460, 471 A.2d 1196 (1984), Chapter 123 reduces the taxpayer’s burden of proof because it eliminates the need to prove that property was generally assessed at less than true value and to *495 prove the common level of assessment. The statute achieves this by defining “average ratio” and “common level range.” Ibid. Generally, when the Tax Court finds from the proofs presented that the ratio of the assessed valuation of the property to its true value is outside the common level range, the court must revise the taxable value of the property by applying the average ratio to the property’s true value. N.J.S.A. 54:51A-6.
In Mumick, the issue before the court was whether Chapter 123 was the exclusive remedy available to a taxpayer that complained of discrimination in property tax assessment. The Court concluded that a taxpayer retains a constitutional right to relief in egregious cases of discrimination, but except in those “rare” cases, “chapter 123 establishes both the right to and measure of relief.” 95 N.J. at 455, 471 A.2d 1196. The Court emphasized that mathematical precision in assessment is not required, and that “[sjubstantial, although imperfect, justice satisfies the constitutional mandate.” Id. at 459, 471 A.2d 1196.
As noted in Piscataway Assocs., Inc. v. Township of Piscataway, supra, 73 N.J. at 552, 376 A.2d 527, the common level of assessment resulting from a revaluation dissipates over time. Even when an assessor is diligent about maintaining the municipality’s assessment list, various changes in the real estate market and in the development of the municipality eventually result in wide variations in the ratios of assessments to sale prices, rendering Chapter 123 relief illusory. Consequently, municipal assessment rolls must be periodically examined to determine whether there is a need for a revaluation.
Municipalities may voluntarily undertake a revaluation. N.J.S.A. 54:1-35.36; N.J.A.C. 18:12A-1.14(a). As this court has pointed out, however, municipal governing bodies are often reluctant to authorize a revaluation: it is an expensive undertaking and, because a revaluation inevitably results in some taxpayers paying more tax than they did before the revaluation, it can have political consequences for the members of the municipal governing body. Freehold Borough v. WNY Properties L.P./Post & Coach, 20 N.J.Tax 588, 607-08 (Tax 2003).
*496 When a municipality does not act voluntarily, county boards of taxation may act to secure the taxation of all property in the county at its taxable value pursuant to N.J.S.A. 54:3-13 by issuing an order of revaluation to a municipality. Bergen County Bd. of Taxation v. Borough of Bogota, 114 N.J.Super. 140, 275 A.2d 158 (App.Div.1971). See also, N.J.S.A. 54:4-47 (county board may generally do everything necessary for the taxation of all property in the county at its taxable value). Such orders of the county boards of taxation must be approved by the Director. N.J.S.A. 54:3-16; N.J.A.C. 18:12A-1.14(b); Bergen County Bd. of Taxation v. Borough of Bogota, supra, 114 N.J.Super. at 145, 275 A.2d 158. The county board of taxation is required to take into account the criteria listed in N.J.A.C. 18:12A-1.14(b) when considering ordering a municipality to conduct a revaluation. N.J.A.C. 18:12A-1.14(b). Not all of the criteria need be met. Borough of Totowa v. Passaic County Bd. of Taxation, 23 N. J.Tax 466, 471 (Tax 2007). A county board may also consider criteria other than the twelve enumerated in the regulation. N.J.A.C. 18:12A-1.14(b)(1). When submitting an order of revaluation to the Director for approval, the county board is required to attach its findings with respect to the criteria set out in the regulation as well as other criteria that were considered by the board. N.J.A.C. 18:12A-1.14(b).
Alternatively, the Director has the independent statutory authority to order or to undertake a revaluation, and need not wait for a municipality or a county board of taxation to act where the need for a revaluation is present. N.J.S.A. 54:1-26 through -30; Mount Laurel Township v. Burlington County Bd. of Taxation, 25 N.J.Tax 319, 329 (Tax 2009). The Director’s own regulation acknowledges that the Director has that authority. N.J.A.C. 18:12A-1.14(c)(6). According to the certification of an assistant director of the Division who supervises the administration of the local property tax on behalf of the Division, the Division does not independently undertake any investigations to secure the uniform taxable valuation of property within the state pursuant to N.J.S.A. 54:1-30 due to limited resources. The Director exercises the authority granted by statute through the promulgation of his *497 regulation setting forth rules for revaluations, reassessments, and compliance plans, N.J.A.C. 18:12A-1.14, and through its authority to approve revaluations ordered or supervised by the county boards of taxation.
Not specifically mentioned in the certification, but crucial to the administration of the local property tax, the Division conducts the study of sales of real property in the State. From the data collected from that study, the Division compiles various statistics for the purpose, among other things, of determining when there is a need for a revaluation.
The Director urges that the court should grant summary judgment in favor of the plaintiffs in this case. In making this argument, the Director asks this court to recognize the “strong deferential presumption” that attaches to the Division’s determinations under Title 54 of the New Jersey statutes, citing Metromedia v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984). The difficulty here, however, is that the Director has not made any determination pursuant to N.J.S.A. 54:1-26 through -30, or otherwise. Had the Division made a determination to order a revaluation of Monroe Township, there would not have been the need for this litigation. Nevertheless, it is clear from the deposition testimony of the Division’s assistant director that, in connection with this litigation, the Division has analyzed the criteria set forth in N.J.A.C. 18:12A-1.14(b)(1) in the same manner as it would have if the Director had been asked to approve an order of revaluation issued by a county board of taxation, and the Division has concluded that a revaluation is needed. Bergen County Bd. of Taxation v. Borough of Bogota, supra, 114 N.J.Super. at 145, 275 A.2d 158; see also N.J.S.A. 54:3-16 (Director must approve orders of a county board of taxation).
The Board has taken no position in this litigation. As already noted, prior to the commencement of this litigation, plaintiffs’ counsel had asked to meet with the Board to discuss plaintiffs’ position that a revaluation was needed. Plaintiffs’ counsel’s letter specifically pointed out that the Monroe assessor’s office had improperly coded numerous sales as non-usable for purposes of *498 the Director’s sales ratio study. In response, the county tax administrator advised plaintiffs’ counsel that the Board was of the view that there was no problem with the Monroe Township assessment list and therefore declined the request for a meeting. According to the county tax administrator’s letter of August 25, 2006, the Board based this determination solely “in view of the fact that in all of the Monroe appeals heard this year there was no proof established overcoming the presumption of regularity.” In a subsequent certification filed in connection with these motions, the administrator clarified that it was his intention to analogize to the language contained in Pantasote Co. v. City of Passaic, 100 N.J. 408, 495 A.2d 1308 (1985), which, he said, “allud[ed] to a presumption of validity afforded to a municipality in its assessments.”
Pantasote stands for the principle that a tax assessment is presumed to be correct and that a taxpayer may not prevail in an appeal of its assessment simply by attacking the assessor’s methodology unless there is a “strong indication arising from the evidence properly before the Tax Court that the quantum of the assessment was far wide of the mark of true value.” Id. at 414-15, 495 A.2d 1308.
It is quite possible that no taxpayer appealing a 2006 Monroe Township assessment to the Board was able to overcome the presumption that his or her assessment was incorrect. Pantasote, supra, 100 N.J. at 413, 495 A.2d 1308. Even if a taxpayer was successful at overcoming that presumption and proved a valuation for his or her property at variance with the assessment, the ratio of the property’s assessment to its true value might have been within the common level range, in which case, the taxpayer was not entitled to relief. N.J.S.A. 54:3-22(c) through (f).
That says nothing about the quality of the assessment list as a whole. The purpose of a revaluation is to achieve tax equality within a taxing district and among the municipalities of a particular county. Borough of Totowa v. Passaic County Bd. of Taxation, supra, 23 N.J.Tax at 469. The criteria to be considered by a county board of taxation are those set forth in the Director’s regulation, N.J.AC. 18:12A-1.14(b)(l). Notably, fifty-two Monroe *499 taxpayers in four residential developments represented by plaintiffs’ counsel were able to establish to the satisfaction of the Board or the Tax Court that their assessments for tax year 2007 were too high. Accordingly, the presumption of correctness of the assessments was overcome. The assessor agreed with those determinations and lowered the assessments for the properties in those developments for tax year 2008. Nevertheless, the Board has never acted and refuses to take a position even now.
At oral argument on the cross-motions, the court requested a certification from the Board as to how many revaluations it had ordered. The Board thereafter submitted a certification stating that, in the past five years, it had entered three orders of revaluation, and had implemented two additional revaluation orders that had been entered in 2003. There are twenty-five municipalities in Middlesex County. As noted by plaintiffs, the certifications were carefully worded so as to avoid stating whether the revaluations had been undertaken voluntarily by the municipalities involved. Orders of revaluation are frequently entered by county boards of taxation, whether the revaluation is voluntary or involuntary, for the purpose of memorializing various administrative details as to the conduct of the revaluation.
Notwithstanding the fact that the Board has refused to take any action (or even a position) with respect to Monroe Township’s need for a revaluation, Monroe Township insists that the complaint must be dismissed because the plaintiffs’ have failed to pursue their administrative remedies before the Board. Monroe Township contends that the only remedy available to plaintiffs is for each to file an individual tax appeal of his assessment pursuant to N.J.S.A. 54:3-21.
None of the authority cited by Monroe Township is apposite. It points first to R. 8:2(c), which provides that no action to review a local property tax assessment may be maintained unless an action has been instituted before the county board of taxation. Plaintiffs do not seek review or reduction of their assessments. Plaintiffs maintain that they have lost confidence that the average ratio actually reflects a common level of assessment in the taxing *500 district due to the irregularities discovered regarding the sales improperly excluded from the Director’s sales ratio study, and due to the manner in which properties constructed subsequent to the 1993 revaluation have been assessed. In other words, plaintiffs allege that, even if they can establish that the value of their properties is something other than their assessments, thereby overcoming the presumption of correctness as required by Pantasote, supra, the average ratio is unreliable, the common level range is therefore unreliable, and that they will be denied Chapter 123 relief pursuant to N.J.S.A. 54:3-22(c) through (f) and N.J.S.A. 54:51A-6. Significantly, the plaintiffs seek prospective relief only, namely, a revaluation for the purpose of establishing uniformity of assessment within the municipality.
Consequently, Brookview Gardens, Inc. v. Borough of Bergenfield, 4 N.J.Tax 625 (Tax 1982), aff'd, 6 N.J.Tax 253 (App.Div. 1983), is not relevant. The court in that case rejected an attempt by a taxpayer to appeal directly to the Tax Court the assessments on sixty-four condominium units when the aggregate assessments on the units met the then-jurisdictional amount for filing a complaint directly with the Tax Court, but the assessment on any single unit did not. The taxpayer sought reductions on the assessments of each of the sixty-four units. Similarly, the taxpayers in Pleasantville Taxpayers v. City of Pleasantville, 111 N.J.Super. 377, 268 A.2d 342 (Law Div.1970), sought to file a class action tax appeal for the purpose of reducing their assessments. Plaintiffs in J.H. Becker, Inc. v. Township of Marlboro, 82 N.J.Super. 519, 198 A.2d 463 (App.Div.1964), alleged that a revaluation had resulted in non-uniform assessments and demanded that the revaluation be re-performed, and that the entire assessment list for that tax year be revised. None of these cases is on point. In each of them, the underlying relief sought by the taxpayers was a revision of assessments that had already been made.
By contrast, the right to bring an action in lieu of prerogative writ for the purpose of securing an order directing a prospective revaluation is well-settled. See, e.g., Switz v. Township of Middle-town, supra, 23 N.J. at 582 and 598, 130 A.2d 15 (modifying by delaying for two years an order directing an assessor to value and *501 assess all taxable real property in the municipality by uniform rules and at full and fair value). See also Village of Ridgefield Park v. Bergen County Bd. of Taxation, 31 N.J. 420, 157 A.2d 829 (1960) (permitting plaintiffs to proceed on a complaint seeking revaluation of other municipalities in the county), where the Court noted: “With respect to the [administrative remedy available to review and revise assessments of taxable property], it is sufficient to say that the statutory right to equal treatment cannot effectively be achieved by an appeal to supervisory statutory agencies or by a multitude of petitions to raise the properties of others to full true value.” Id. at 426-27,157 A.2d 829.
There are no legal or factual grounds for the assertion that this action is barred by failure to pursue an administrative remedy. The plaintiffs are not aggrieved by their assessments but by the entire assessment list. Consequently, petitions to the Board filed pursuant to N.J.S.A. 54:3-21 will not afford them the relief they seek. Monroe Township has not cited any other statute that would provide appropriate relief.
In Feldman v. Borough of Ringwood, 23 N.J.Tax 29 (Tax 2006), the Tax Court declined to order a revaluation and instead directed the county board of taxation to consider the record and make whatever other investigation and inquiry the board deemed necessary to determine whether a revaluation should be ordered. Id. at 37. The court concluded in Feldman that the proofs presented by the plaintiffs were insufficient to establish that a revaluation should be ordered but were sufficient to require the county board of taxation to review them. Neither the Director nor the county board of taxation took a position as to the need for a revaluation. Id. at 32. The opinion does not indicate whether the Feldman plaintiffs had attempted informally to bring their grievances to the county board of taxation as plaintiffs did here.
The court concludes that referral back to the Board in this case would be futile. The Board has continuously refused to investigate or make any finding based on facts or take any action Unlike the proofs offered in Feldman, the court concludes that the evidence before it in the current case establishes that a revalua *502 tion is required in order to bring uniformity to the assessment of local property taxation in Monroe Township.
Especially persuasive is the high general coefficient of deviation, which has steadily increased from 14.61 in 2005 to 21.31 in 2009. This is a measure of how frequently sales transactions produce an assessment sales ratio that varies from the common level of assessment in a municipality. N.J.A.C. 18:12A-1.14(b)(l)(i). According to the regulation, a general coefficient of deviation that exceeds 15% generally indicates a need for revaluation. I find in this case that it is a sufficient ground by itself to order a revaluation.
The variation in individual assessment sales ratios for Class 2 property, which is by far the most predominant property class in Monroe Township, also establishes that, more often than not, residential property sold for sales prices that produced individual ratios of assessment to sale price outside of the common level range. Confirming the lack of uniformity of assessment within Class 2, the stratified coefficient of deviation for class 2 properties was 14.11 in 2006 and steadily increased to 20.84 in 2009. N.J.A.C. 18:12A-1.14(b)(l)(ii). In other words, at least as to Class 2 property, there really is no common level of assessment.
Moreover, even though the number of sales of Class 1 and Class 4 properties was too small to make any reliable determination from the segmented coefficients of deviation as to whether there was a lack of uniformity among property classes, the assessor’s deposition testimony plainly evidences that a different methodology and a different standard of value was used for Class 4 properties than Class 2 properties. Class 4 properties were assessed based on current market value.[8] Class 2 properties were apparently assessed based on cost standards set in 1993. This *503 contravenes the Uniformity Clause and does not conform to the statutory requirement that property be assessed annually at “full and fair value.” N.J.S.A. 54:4-23.
That the last revaluation was conducted in 1993 is also compelling evidence of the need for a revaluation. Numerous new residential neighborhoods have been added to the municipality since 1993, but there has been no attempt to value any of them based on current market value, except with respect to adjustments to assessments in four developments following the loss of several tax appeals in 2007. There has been no attempt to determine the current market value of homes assessed during the 1993 revaluation. As our Supreme Court noted in Piscataway Assocs., supra, 73 N.J. at 552, 376 A.2d 527, “[a] great number of economic, social, and governmental influences will affect the properties within a taxing district in varying degree. In order to keep assessments equitable, the assessor must keep in constant touch with changing conditions.” (quoting The Handbook for New Jersey Assessors, § 903.1 at 217 (rev. ed. 1965)). It is simply not credible that of the numerous residential developments and neighborhoods within Monroe Township, all have increased (or decreased) in value at the same rate over seventeen years.
For the foregoing reasons, plaintiffs’ motion for summary judgment is granted, and Monroe Township’s motion is denied. Monroe Township is directed to conduct a complete revaluation to be effective for tax year 2012. Defendants will file with the court a proposed plan and schedule for the revaluation by December 1, 2010. Once a schedule has been approved by the court, any requests for extensions of time shall be by application to the court. In all other respects, the Board and the Director are directed to exercise the same supervisory roles over the revaluation to the same degree and in the same manner as though the revaluation had been ordered by the Board and approved by the Director. The Monroe Township assessor, the Board and the Director are each directed to comply with the Director’s regulations regarding revaluations, including, without limitation, N.J.A.C. 18:12-4.1 through -4.11, and N.J.A.C. 18:12A-1.14(b)(2), (3) and (4).

 The collection of data for the study was described in Fort Lee Borough v. Director, Div. of Taxation, 12 N.J.Tax 299, 301-02 (Tax 1992), aff'd, 13 N.J.Tax 323 (App.Div.1993).

 The statutory remedy for assessment discrimination within a taxing district is commonly known as Chapter 123 because it was originally enacted as L. 1973, c. 123.

 The last year for which the district weighted ratio was provided by the parties was 2007. No more recent public information could be located by the court on the Division's website.

 The regulation was amended in 2005 to list thirty-three categories of non-usable deed transactions. 37 N.J.R. 4462(a) (November 21, 2005).

 Statistics for 2009 were not included in the motion papers because they were unavailable at the time the motion was filed. The court takes notice that they have since been published on the Division's website at http://www.state.nj.us/ treasury/taxation/lpt/coefdev.shtml (follow "Deviation Tables — 2006 to 2009" hyperlink) (last visited Sept. 30, 2009).

 Statistics for this period were not included in the motion papers because they were unavailable at the time the motion was filed. The court takes notice that they have since been published on the Division’s website at http://www.state.nj. us/treasury/taxation/lpt/grantors-listing.shtml (follow 2009 Usable Listings hyperlink)(last visited October 6, 2010).

 As used in the Uniformity Clause, the term "taxing district" means a municipality. Town of Secaucus v. Hudson County Bd. of Taxation, 133 N.J. 482, 506, 628 A.2d 288(1993).

 Due to frequent property tax appeals by owners of commercial properties, the assessor has had occasion to review commercial properties assessed during the 1993 revaluation. It appears from the deposition testimony that commercial properties assessed in the 1993 revaluation, as well as commercial properties constructed subsequent to the revaluation, are assessed on the basis of market value.